EDISON ELECTRIC LIGHT Co. *v.* UNITED STATES ELECTRIC LIGHTING Co.

*(Circuit Court, S. D. New York. October 18, 1890.)*

1. PATENTS FOR INVENTIONS—ACTION FOR INFRINGEMENT—PRODUCTION OF DOCUMENTS.
    Complainant in an action for the infringement of a patent made admissions, on an application for another patent on which letters never issued, which defendant contends greatly restrict the claim of the patent in suit. *Held*, that complainant could not refuse obedience to a *subpœna duces tecum* to produce such application, and the correspondence with the patent-office in regard thereto, on the ground that such documents, if produced, would be immaterial, as the court will not pass on that question until the evidence is before it.

2. SAME—CONFIDENTIAL COMMUNICATIONS.
    The fact that the application for the unissued patent and the letters to the patent-office in regard thereto are the result of consultations between complainant and his counsel does not render them privileged as confidential communications, since they ceased to be confidential when complainant and his counsel parted with exclusive knowledge of their contents by sending them to the patent-office.

3. SAME—COMMUNICATIONS TO PATENT-OFFICE.

Communications between an applicant for a patent and the patent-office touching an unissued patent are not recognized as privileged either by any express legislation or by any rule of law.

4. SAME.

Rev. St. U. S. § 483, provides that the commissioner of patents, subject to the approval of the secretary of the interior, may establish regulations "not inconsistent with law for the conduct of proceedings in the patent-office." *Held,* that rule 15 of the patent-office, which provides that pending applications for patents shall be preserved in secrecy, was inoperative to change rules of law in courts of justice by making such applications privileged communications, both because to that extent it would be "inconsistent with law," and also because the effecting of such a change is not a regulation of the "proceedings in the patent-office."

5. SAME—ATTORNEY AND CLIENT.

A party cannot excuse non-compliance with a *subpœna duces tecum* commanding him to produce documents, unprivileged in his own hands, by showing that he has delivered them into the hands of his counsel.

Application for an order to compel production of papers on a *subpœna duces tecum.*

*Samuel A. Duncan* and *Edmund Wetmore,* for the motion.

*C. A. Seward* and *Grovenor Lowrey, contra.*

LACOMBE, Circuit Judge. Complainant is prosecuting a suit for alleged infringement of a patent for incandescent electric lamps, (No. 223,898, application November 4, 1879,) issued January 27, 1880, to Thomas A. Edison, and by him assigned to the complainant. On December 11, 1879, said Edison filed an application in the patent-office for improvements in electric lamps, and subsequently, namely, on December 15, 1880, divided such application into two parts, and embodied one division of the same in a new or divisional application of that date. No patent has been issued upon such divisional application. The defendant is endeavoring to prove the contents of such divisional application. In connection with such application, the patent-office has, it is claimed, sent various letters to the applicant, Edison, and to the complainant, and the said applicant and complainant have also sent letters relating thereto to the patent-office. The originals of the application and of the letters to the patent-office are with the commissioner of patents, who also presumably has copies of the letters sent by his office. The complainant has possession of the original letters from the patent-office, and has copies of the letters to that office and of the application. These papers are in the hands of one of its counsel, who claims that they are privileged communications, and refuses to produce them. The proper officer of the complainant corporation has been duly subpœnaed *duces tecum* to produce the papers, and declines to do so, refusing to recall them from its counsel so as to obey the subpœna. Application has been made by the defendant to the supreme court of the District of Columbia for a *mandamus* to compel the commissioner of patents to furnish copies in accordance with the provisions of section 892, Rev. St. U. S. That application has been refused.

Complainants concede that the application for a *mandamus* and its refusal by the court puts the defendant in the same situation as if it had duly subpœnaed the commissioner to appear before an examiner, and, upon his refusal to produce the papers in obedience to such subpœna,

had applied to the court in the District of Columbia to punish him for contempt, without success.

It was further conceded on the argument that the defendant has done all that is necessary to put it in a position to give secondary evidence of the contents of any of those documents, the originals of which, if present, would be admitted in evidence. Both of these applications were filed by Edison in pursuance of a contract made with the complainant corporation November 15, 1878. By this he not only transferred to the complainant the inventions which he had already patented, but also expressly covenanted to prosecute, with his utmost skill and diligence, further necessary investigations and experiments, and to promptly apply for patents for any further inventions and improvements in the field of electric light. He also agreed to prepare, or cause to be prepared, specifications, etc., of such inventions and improvements "as may be required by the company," to deliver the same to the company at its request, and to request, upon application for letters patent, that the same be issued to the company as sole owner. By this contract he conveyed to the complainant all such inventions and improvements which he might make for the space of five years after its date. The attorney who prepared, under Mr. Edison's directions, the particular application with which this motion is concerned, was the complainant's lawyer; and all the expenses of the application were borne by it. The theory on which defendant seeks to make proof of the divisional application and of the declarations made by Edison and by the complainant in their letters to the patent-office, concerning such application, is briefly this: That there is in the patent sued upon an ambiguity, its language being open to either of two constructions, one a very broad one, the other much more restricted; that, inasmuch as the language of the patent is the language of the applicant, his admissions are admissible for the purpose of removing the doubt with which his choice of words has surrounded the document; that for the purpose of making applications for patents covering inventions and discoveries of the kind conveyed absolutely to the complainant by the contract of 1878, Edison and the complainant are practically the same; that in the particular divisional application above referred to Edison uses language which is inconsistent with the claim that in the earlier application (the one for the patent in suit) he used the ambiguous words or phrases in their broad meaning; and, finally, that when the letters to the patent-office are read in connection with the letters to which they are replies, this fact will still more plainly appear.

This argument deals, of course, with the materiality of the proposed evidence when produced, and to this motion, which is practically directed to securing its presence in court, the complainant objects that the evidence, if produced, would be immaterial. That question, however, should not be determined upon application to produce the papers. The court should pass upon it with the proposed evidence before it, so that it may act intelligently, and that an exception to its refusal to admit the testimony, should it so refuse, may be of avail to the exceptant upon appeal. If the only objection to admitting these documents in evidence be that

they are immaterial, that objection is of no avail in opposition to an application which calls for their production.   Without therefore finally determining the question as to the materiality of these documents, it is sufficient to say that, in view of the contract relations between Edison and the company, and of the rule of law as to the admissibility of a party's admissions, and in view of the effect accorded to such admissions in the case cited by defendant, (*Giant-Powder Co.* v. *California, etc., Co.,* 4 Fed. Rep. 720,) and, finally, in view of the contents of the documents as disclosed by the moving papers, there is not found in the objection as to the materiality of the evidence sufficient to warrant the refusal of the officers of the corporation to obey the *subpœna duces tecum,* and to produce the documents, which are concededly in the hands of its counsel, subject to its orders and under its control.

It is, however, further objected that the documents are privileged; that the application and the letters patent are the result of consultations between the applicant and his counsel; that their phraseology must necessarily reflect both the information given by the client to the counsel and the advice given by the counsel to the client; and that they have been placed in the hands of counsel under the protection of the confidential relation.   Of the various cases cited upon the argument, many deal with the question as to the duty of the counsel.   *Coveney* v. *Tannahill,* 1 Hill, 33; *Wright* v. *Mayer,* 6 Ves. 280*a;* *Dale* v. *Denison,* 4 Wend. 558; *Kellogg* v. *Kellogg,* 6 Barb. 116; *Chirac* v. *Reinicker,* 11 Wheat. 280; *Insurance Co.* v. *Schaefer,* 94 U. S. 457; *Hibberd* v. *Knight,* 2 Exch. 11; *Rex* v. *Dixon,* 3 Burrows, 1687.   In the case last cited, Lord MANSFIELD said that, instead of producing the papers, the attorney ought immediately upon receiving the subpœna to have delivered them up to his client.   The defendant, however, is not contending upon this motion that Mr. Dyer, the counsel who received these documents, is under any obligation to produce them in response to the subpœna, or to testify as to their contents.   The only question now presented is whether the complainant's officers, under whose control the documents now are, who have the power to call them back from the possession of counsel, even if he has not, in accordance with the suggestion of Lord MANSFIELD, above quoted, already returned them, can excuse themselves from producing these documents in response to the subpœna, upon the theory that they are privileged as being the subject or the result of confidential communications between client and counsel.   If documents are not privileged while in the hands of a party, he does not make them privileged by merely handing them to his counsel.   The latter may perhaps properly refuse to produce them, but the former cannot do so merely because he is prepared to say that he has shown or has delivered them to his counsel.   The converse of this proposition was contended for by the complainant upon the argument, but the authorities cited do not sustain such contention.   In *Water Co.* v. *Quick,* 3 Q. B. Div. 315, transcripts of short-hand notes of interviews between officers and employes of the company, which interviews were had with the object of obtaining statements of fact to be furnished to counsel for the company for the purpose

of securing his legal advice touching an intended action, were held privileged. In *Wheeler* v. *Le Marchant*, 17 Ch. Div. 683, the questions as to whether certain written communications which had passed between the solicitor of the defendants and their surveyor, and between the surveyor and the solicitor, were privileged. The court held that they were not, except such as were prepared after dispute had arisen between plaintiffs and defendants, and for the purpose of obtaining information, evidence, or legal advice with reference to litigation existing or contemplated between the parties. Certainly nothing of these cases supports the proposition that a party may secure for a document not otherwise privileged the protection of the rule by handing it to his counsel. It is urged, however, that these papers are privileged because they are the result or product of confidential consultations between client and counsel. This argument applies, of course, only to the application and to the letters to the patent-office.

The principles deducible from the authorities cited, and from others which have been examined, seem to be these: Neither client nor counsel may be asked as to mutual communications induced by their confidential relation, nor can either be required to produce any document emanating from one and transmitted to the other in the course of such confidential relation. The client cannot be required to produce letters written by him to his counsel, stating the facts as to which he wished advice, nor letters from his counsel embodying that advice, or even asking for further facts. If, as the result of the consultation between client and counsel, there is prepared some document, such as a form of contract or a notice or a letter, and that document is given by one to the other, and by him kept, it is probably privileged; its contents being confidential between client and counsel, and the document itself effectual only as an expression of the statement of the client as to the facts, and of the opinion of the counsel as to what kind of document it is desirable to prepare in view of the facts. *Genet* v. *Ketchum*, 62 N. Y. 626. But if the document thus confidentially prepared is not so kept, if the contract is by the client executed with some third person, or the notice is given or the letter sent to some outsider, its contents are no longer confined to the knowledge of client and counsel, and the party can no longer, as to a document which he has thus made public, claim that it is privileged because it is confidential. Such seems to be the rule fairly deducible from the decisions. *Minet* v. *Morgan*, L. R. 8 Ch. 361; *Pearse* v. *Pearse*, 11 Jur. 52; *Insurance Co.* v. *Schaefer*, 94 U. S. 457; *Coveney* v. *Tannahill*, 1 Hill, 33; *Whiting* v. *Barney*, 30 N. Y. 330; *Randolph* v. *Quidnick Co.*, 23 Fed. Rep. 278; *Foakes* v. *Webb*, 28 Ch. Div. 287; *Ford* v. *Tennant*, 9 Jur. (N. S.) 292; *In re Whitlock*, 15 Civil Proc. R. 204, 2 N. Y. Supp. 683; *In re Mitchell*, 12 Abb. Pr. 249.

The complainant, however, contends that the documents are privileged, because they are communications passing between the applicant and the patent-office, touching an unissued patent. The existence of no such general privilege is recognized in any of the authorities cited. See, also, the exhaustive enumeration of authorities given in *Whiting* v. *Barney* and *In*

*re Mitchell, supra;* and also the cases cited in 1 Greenl. Ev. §§ 250–252, and in Whart. Ev. §§ 604, 604*a*, 604*b*. Nor has any express legislation created it. By section 4902, Rev. St. U. S., congress has provided that *caveats* and descriptions, specifications, etc., interfering with such *caveats*, shall be filed in the confidential archives of the patent-office, and preserved in secrecy; but there has been no such legislation as to pending applications.

The complainant relies upon a rule or regulation of the patent-office, as follows:

"(15) *Caveats* and pending applications are preserved in secrecy. No information will be given without authority respecting the filing by any particular person of a *caveat* or of an application for a patent, or for the reissue of a patent, the pendency of any particular case before the office, or the subject-matter of any particular application, unless it shall be necessary to the proper conduct of business before the office, as provided by rules 97, 103, and 108."

That rule has been established under authority of section 483, Rev. St. U. S., which provides that "the commissioner of patents, subject to the approval of the secretary of the interior, may from time to time establish regulations not inconsistent with law for the conduct of proceedings in the patent-office."

This rule, so far as it regulates the conduct of proceedings in the patent-office, is binding upon all the subordinates in that office; possibly, also, upon the commissioner of patents himself, unless he obtains the assent of the secretary of the interior to its total or partial abrogation; but it is inoperative to change the rules of evidence in courts of justice, both because to that extent it would be inconsistent with law, and also because the effecting of such a change is in no sense the regulation of proceedings in the patent-office. Under a somewhat similar section (section 252) the secretary of the treasury, under direction of the president, is authorized to establish regulations, not inconsistent with law, to secure a just appraisal of imported goods. If, under such authority, he should make a rule that no examiner or assistant appraiser should give information to any one as to the methods by which he ascertained the composition or quality of such imported goods as he examined, such rule might be binding upon the subordinate as to any voluntary disclosures, but would certainly not excuse him from testifying in court if the sufficiency of his examination of the goods were made the subject of judicial inquiry.

The refusal of the company's officers to produce the documents in question under *subpœna duces tecum* cannot therefore be excused upon the theory that they are privileged communications. The specific relief prayed for on this application is for an order—

"That the complainant consent that the commissioner of patents furnish to the defendant's solicitors, at their expense, a certified copy of the file wrapper and contents of the pending application for letters patent filed in the patent-office of the United States by Thomas A. Edison on the 15th day of December, 1880, the same being a division of an earlier application known as the 'paper carbon application,' filed by the said Edison on or about December 11, 1879; or, in lieu thereof, at complainant's option, that complainant produce,

for the examination of defendant's counsel, and for use as evidence herein, if defendant be so advised, the full text, either original papers or copies, of said application, and of all correspondence in relation thereto which has passed between the patent-office and the said Edison, or the complainant herein, or his or its attorneys."

Sufficient ground for the making of such an order, if it be within the power of the court to make it, is not shown. It does not appear that the commands of the *subpœna duces tecum* will not be ample to obtain such evidence as that described in the motion. *Merchants' Nat. Bank* v. *State Nat. Bank*, 3 Cliff. 202; *Bischoffsheim* v. *Brown*, 29 Fed. Rep. 341. Certainly as to the letters from the patent-office, the originals of which are in the possession of the complainant, the writ of subpœna should produce the best evidence; and as to the copies of the application and of the letters to the patent-office, sufficient foundation having been laid for the admission of secondary evidence, they may be offered, when produced and identified, with the same effect as if they were originals. The notice of motion, however, also contains a prayer for general relief, and under that prayer the defendant may take an order committing the officers of the corporation for contempt in failing to obey the *subpœna duces tecum*.