DANCEL et al. v. GOODYEAR SHOE MACHINERY CO.

(Circuit Court, D. Massachusetts. March 14, 1904.)

No. 1,803.

1. SUBPŒNA DUCES TECUM—FEDERAL PRACTICE—TAKING DEPOSITIONS DE BENE ESSE.

A federal court has power to issue a subpœna duces tecum to compel the production of books or papers by a witness being examined de bene esse within the district, under Rev. St. U. S. § 863 [Comp. St. 1901, p. 661]; but such subpœna is not a matter of right, and may not be issued as such by the clerk, but only on an order of the court, made upon preliminary proof that the documents called for are in the possession of the witness, and are, prima facie, competent and material evidence in the case, although the court will not finally determine their materiality or

admissibility until the documents have been produced, and have been brought before it in proceedings to compel the witness to exhibit the same before the examiner.

**2. SAME.**

A notary public, before whom depositions de bene esse are to be taken, under Rev. St. U. S. § 863 [U. S. Comp. St. 1901, p. 661], has no power to issue a subpoena duces tecum to compel the production of books and papers by a witness.

**3. SAME—LIMITATION ON POWER OF COURTS.**

A party has no right, and a court no power, to compel the production, either in court or before a magistrate, of the private papers of a witness which are not relevant and material to the case. Any practice which sanctions such a proceeding is an infringement of a fundamental personal right guarantied by the federal Constitution, and which the courts have always recognized in the exercise of power given them to compel the production of papers.

**4. SAME—MATERIALITY OF DOCUMENTS—SUFFICIENCY OF SHOWING.**

A general averment in a petition that a large number of books, records, and papers of a defendant, specified, are material and necessary for plaintiff's use in a suit, is not sufficient to authorize the issuance of a subpoena duces tecum to compel their production.

In Equity. Petition for subpoena duces tecum.

Roger Foster, for complainants.

Edwards H. Childs, Elmer P. Howe, and William A. Sargent, for defendant.

COLT, Circuit Judge. This is a petition for an order directing the clerk to issue a subpoena duces tecum under section 863 of the Revised Statutes [U. S. Comp. St. 1901, p. 661]. The material part of the petition is as follows:

"I. Your petitioners reside in the county of Kings and state of New York, and they are the complainants in a certain suit in equity against the Goodyear Shoe Machinery Company, of Portland, Maine, otherwise known as the United Shoe Machinery Company, of Portland, Maine,' which is now at issue and pending in the Circuit Court of the United States for the Southern District of New York. The testimony of Elmer P. Howe, who is vice president and a director of said defendant, and of Sidney W. Winslow, who is president and a director of said defendant, together with the books and papers described in the prayer of the petition, is and are material and necessary for use in support of the case of the complainants in said suit.

"II. On November 20, 1903, the complainants caused to be duly served on Edwards H. Childs, Esq., solicitor for the defendant in said suit, a notice, in accordance with section 863 of the Revised Statutes of the United States, that the testimony of said Howe and of said Winslow, both of whom reside in the state of Massachusetts, would be taken before George Hogg, a notary public, at his office, No. 87 Milk street, in the city of Boston, county of Suffolk, and state of Massachusetts, on November 27, 1903, beginning at 10:30 a. m. on that day, and continuing from day to day until completed. The clerk for the Circuit Court for the District of Massachusetts has been requested to issue, sign, and seal a subpoena for said witnesses, but he has refused so to do. * * *

"III. Serious injury and damage will be caused to the complainants herein unless the clerk of the Circuit Court of the United States for the District of Massachusetts issues, signs, and seals such a subpoena, naming as a time for the attendance of said witnesses the day and hour to which said notary adjourns the taking of said deposition. No previous application for an order directing the clerk to issue such a subpoena has been made.

---

¶ 2. See Depositions, vol. 16, Cent. Dig. §§ 126, 127.

"Wherefore your petitioners pray that an order issue directing the clerk of the Circuit Court of the United States for the District of Massachusetts to issue under the seal of said court and to sign and to attest a subpœna directed to Elmer P. Howe, individually and as vice president of the Goodyear Shoe Machinery Company, of Portland, Maine, and to Sidney W. Winslow, individually and as president of the Goodyear Shoe Machinery Company, of Portland, Maine, which corporation is otherwise known as the 'United Shoe Machinery Company, of Portland, Maine,' directing them and each of them to attend before George Hogg, a notary public, of No. 87 Milk street, in the city of Boston, county of Suffolk, and state of Massachusetts at such time as may be appointed by said notary, and so on from day to day until their deposition is completed, then and there to be examined de bene esse in pursuance of the Revised Statutes of the United States, and then and there to testify and give evidence on the part of the complainants in a certain cause hereinbefore described, and directing them and each of them to bring with them and produce at the time and place aforesaid all books of account, minutes of meetings of stockholders, minutes of meetings of directors, minutes of meetings of committees, certificates of shares of stock, stock registers, stock ledgers, contracts and copies of the same, letter books, letters, and other papers of the Goodyear Shoe Machinery Company, of Hartford, Connecticut, and also all books of account, minutes of meetings of stockholders, minutes of meetings of directors, minutes of meetings of committees, certificates of shares of stock, stock registers, stock ledgers, contracts and copies of the same, letter books, letters, and other papers of the Goodyear Shoe Machinery Company, of Portland, Maine, and also all books and papers of the United Shoe Machinery Company that contain any reference to, and all that name, the Goodyear Shoe Machinery Company, of Hartford, Connecticut, and also all books and papers of the United Shoe Machinery Company that contain any reference to, and all that name, the Goodyear Shoe Machinery Company, of Portland, Maine, and all that name and all that refer to any machine manufactured under letters patent number 459,036, and also all such that refer to such letters patent, and that your petitioner may have such other and further relief in the premises as may be just; and your petitioners will ever pray," etc.

Attached to the petition is a copy of the pleadings in the case, also the affidavit of counsel that the allegations in the petition are true to his personal knowledge, and that the petition was not sworn to because the petitioners at the time were outside of the county of New York.

The granting of the petition is opposed on several grounds:

(1) The court has no power under section 863 to issue a subpœna duces tecum to compel the production of books and papers.

(2) If the court has the power, it should be exercised with regard to a reasonable protection of the witness, and only upon the preliminary proof required by section 869 of the Revised Statutes [U. S. Comp. St. 1901, p. 665].

(3) The papers on which this application is made are clearly insufficient respecting the requisite preliminary proof.

The first objection is untenable. The power of the court to order a subpœna duces tecum under section 863 has been unquestioned since the decision of Judge Choate in United States v. Tilden, 10 Ben. 566, Fed. Cas. No. 16,522. It has been recognized in this circuit by Judge Lowell in Davis v. Davis, 90 Fed. 791. The history of the statute is not repugnant to this construction, and its terms are broad enough to cover it. Convenience and necessity call for such a construction if possible. The only danger lies in an abuse of the power by a loose and unrestricted exercise of it.

The second objection presents the question whether a subpœna duces tecum should issue as of course, or only by order of court, upon preliminary proof that the documents are in possession of the witness and appear to be competent and material evidence in the case. Upon this point the position of the petitioners, as stated in the brief of counsel, is as follows:

"Ever since Judge Choate's opinion, 20 years ago, it has been the uniform practice in the federal courts throughout the country, except possibly in Massachusetts, for subpœnas duces tecum to be issued as of course, usually even without application to the court, when depositions were taken de bene esse before a notary in another state under Rev. St. U. S. § 863. Judge Lowell's decision seems to have settled the practice in this circuit; and we submit that it would be unfortunate, tend to mislead litigants and practitioners, and to waste the time of the court by needless motions and applications, if a different rule were to be adopted in this circuit from that followed by other federal courts. Usually the subpœna is not issued even by the clerk in such a case, but is signed and sealed by the notary (Loveland's Federal Forms, No. 23); but since the witnesses have disobeyed that signed and sealed by the notary, as is shown by his certificate, and the clerk has refused to issue one without authority from the court, an order of the court either punishing the witnesses for contempt, or directing an attachment against them, or directing the clerk to issue a subpœna duces tecum, is required."

It is contended in the first place that, since the witnesses have been served with a subpœna duces tecum issued by the notary public, the court may direct a writ of attachment against them for contempt. As the witnesses, however, have not disobeyed any process of this court, it manifestly has no power to punish them for contempt. Further, a notary public has no authority under section 863 to issue a subpœna. The statute says:

"Any person may be compelled to appear and depose as provided by this section, in the same manner as witnesses may be compelled to appear and testify in court."

The natural and reasonable construction of this language is that, if the witness fails to comply with the notice in writing previously mentioned in the statute, he may be compelled to appear and testify in the same manner as witnesses in court may be compelled; that is, by a subpœna issued by the court of the district in which the testimony is taken. This has been the settled construction since United States v. Tilden, where the court said that those words—

"Refer to the instrumentalities then in force in the common practice of the courts for compelling the attendance and the testimony of witnesses, the writ of subpœna and the power to punish disobedience to a lawful order as a contempt. This is the practical construction which these words have received."

It is further contended that it is the universal practice outside of the district of Massachusetts for the clerk of the court to issue a subpœna duces tecum as of course. There is no authority cited which supports this proposition. This will appear from an analysis of the cases upon which the petitioners rely: United States v. Tilden, 10 Ben. 566, Fed. Cas. No. 16,522; Davis v. Davis (C. C.) 90 Fed. 791; Bischoffsheim v. Brown (C. C.) 29 Fed. 341; and Edison Electric Light Company v. United States Electric Lighting Company (C. C.) 44 Fed. 294; Id., 45 Fed. 55.

In United States v. Tilden, it was decided (1) that the court has power under section 863 to issue a subpœna duces tecum, and (2) that

it has no power under this statute to issue such a subpœna to compel the production of books and papers for the purpose of refreshing the recollection of the witness. Upon the first point the court said:

"I have * * * reached the conclusion that under this section it is competent for the court to issue a subpœna duces tecum to compel the production, upon the examination, of books and papers which would be competent evidence in the cause."

It will be noticed that the court did not hold that it had the power by a subpœna duces tecum to call for the production of any papers, but only those which would be competent evidence in the case. It followed necessarily, from this limitation of the court's power, that a subpœna duces tecum should not issue as of course, but only under some restrictions, such as a prior investigation into the materiality of the evidence called for; and the court so held. This appears from the language of the opinion on the second point, denying the power of the court to compel the witness to produce papers for the purpose of refreshing his memory.

"But it certainly is a startling, and, I believe, a novel, proposition that a merchant, or broker, or banker may be subpœnaed to produce all his books of account and all his business papers during a period of 10 years, as was substantially attempted in this case, upon a mere possibility that out of this mass of books and papers some might be found whereby he could refresh his memory, if it should, upon his examination, appear that his memory needed refreshing on some point on which he should prove to be able to give testimony competent in the cause. No precedent is produced for this exercise of power, nor has any statute or decision been found or cited which appears to recognize or authorize the compulsory production of books and papers for such a purpose; the same not being relevant or material to the cause. * * * It has been well pointed out that in such examinations, on account of the limited power of the examining magistrate, persons summoned for such examination have less chance of protection against the oppressive and injurious use of this power of the court than upon a trial in court, where all questions arising can be submitted to and decided by the court as they arise; and I am satisfied that the statute in question does not require a construction permitting such a compulsory production of a witness' books and papers. A very strong, if not a controlling, argument in support of this view is to be drawn from the terms of the statute of 1827 (Rev. St. §§ 868, 869 [U. S. Comp. St. 1901, pp. 664, 665]), above referred to. In providing for the regulation of this very matter in examinations under a commission or dedimus potestatem, it expressly limits the compulsory production of books and papers to such only as would be, 'if produced, competent and material evidence for the party applying therefor.' This is a legislative declaration of the highest possible character, as it seems to me, that this was as far as the policy of the law goes in the matter of compelling the production of books and papers on the examination of witnesses out of court, and all that substantial justice requires in this direction, having a due regard to the rights, the convenience, and the interests of other persons, as well as of the parties litigant. No reason can well be imagined for supposing that Congress would withhold from this class of examinations under commission, where the commissioners are appointed by the court, and the mode of interrogation is prescribed before the examination under the direction of the court itself, as full an authority to compel the production of books and papers by the witness as is allowed on an examination de bene esse, which is subject to less restriction and supervision. This act, therefore, seems to show that Congress understood that this was the limit allowed for the compulsory production of books and papers under the system of examinations de bene esse then in force."

This sound reasoning fully covers the point under consideration, and is directly opposed to the petitioners' position.

In Davis v. Davis an examination of the record on file in the clerk's office discloses that the subpœna duces tecum was not issued as of course, but only upon petition, supplemented by affidavits and a copy of the principal document referred to. This preliminary proof showed that the papers called for were in the possession of the witness, and that they were competent and material evidence in the case.

In Bischoffsheim v. Brown the only point determined was that section 724 of the Revised Statutes [U. S. Comp. St. 1901, p. 583], which relates to the production of documents by the parties in actions at law "on motion," does not apply to suits in equity. In the course of the opinion, Judge Wallace said:

"Parties to suits in equity, as well as in suits at law, are now competent witnesses in the courts of the United States by statute, and may now be examined at the instance of their adversary. As a witness a party can be compelled by a subpœna duces tecum to produce books, documents, and papers in his possession, the same as any other witness. Merchants' Nat. Bank v. State Nat. Bank, 3 Cliff. 201 [Fed. Cas. No. 9,448]. He is bound to obey the writ and be ready to produce the papers in obedience to the summons. Like any other witness, it is his duty to make reasonable search for the papers and documents required, if they are in his possession (3 Chit. Pr. 829); but, before he can be required to exhibit their contents, he is entitled to appeal to the discretion of the court, if any sufficient reason exists to protect him from a disclosure."

This is simply a statement of the rule that a party, like any other witness, may be compelled by subpœna duces tecum to produce books and papers. It has no bearing on the question now before the court.

In Edison Electric Light Company v. United States Electric Lighting Company (C. C.) 44 Fed. 294, a subpœna duces tecum had been issued, and the case was heard upon an application for an order to compel the production of the papers described in the subpœna, and the officers of the corporation were adjudged in contempt for failing to obey the writ. The case arose under equity rule 67. The subpœna called for the divisional application of a patent, and letters in relation thereto, in the hands of the complainant. After stating the theory upon which the defendant sought to make proof of these papers, and the argument urged in support of their materiality, Judge Lacombe, in his opinion, said:

"This argument deals, of course, with the materiality of the proposed evidence when produced, and to this motion, which is practically directed to securing its presence in court, the complainant objects that the evidence, if produced, would be immaterial. That question, however, should not be determined upon application to produce the papers. The court should pass upon it with the proposed evidence before it, so that it may act intelligently, and that an exception to its refusal to admit the testimony, should it so refuse, may be of avail to the exceptant upon appeal. If the only objection to admitting these documents in evidence be that they are immaterial, that objection is of no avail in opposition to an application which calls for their production. Without, therefore, finally determining the question as to the materiality of these documents, it is sufficient to say that, in view of the contract relations between Edison and the company, and of the rule of law as to the admissibility of a party's admissions, and in view of the effect accorded to such admissions in the case cited by the defendant (Giant-Powder Co. v. California, etc., Co. [C. C.] 4 Fed. 720), and, finally, in view of the contents of the documents as disclosed by the moving papers, there is not found in the objection as to the materiality of the evidence sufficient to warrant the refusal of the officers of the corporation to obey the subpœna duces tecum, and to produce

the documents, which are concededly in the hands of its counsel, subject to its orders, and under its control."

This case came before the court again, and is reported in 45 Fed. 55. After the headnote appears the following memorandum, filed by Judge Lacombe:

"'The documents called for by the subpœnas have now been brought into court. In excuse for not delivering them to the examiner, it was urged that some further objection to their presentation in evidence is to be made, which counsel thought should be made, not before the examiner, who sits without power to rule upon objections, but before the court. The motion to punish for contempt is therefore denied. The papers are delivered to the examiner. When any one of them is called for by the defendant, if objection to its exhibition is made by counsel for complainant, the examiner will certify the objection to the court, and send therewith the document itself. Thereupon the court will rule upon the objection.'"

In the course of his opinion, upon the objection certified by the examiner, the court said:

"The authorities cited by the complainant do not go to the extent of holding that it is only by bill of discovery or similar method that some particular piece of documentary evidence is to be obtained. No doubt, when it is brought into court, the objection that 'it is against conscience and the spirit of Anglo-Saxon laws and liberty' to permit its inspection by the other side, or its introduction in evidence, may be urged, as it has been in this case, before the document is exhibited to any one but the court. But that the process of subpœna duces tecum is a convenient, efficient, and proper method for bringing the paper into court is beyond dispute in this circuit. * * *

"The subpœna (so far as the present objection is concerned) is specific. In this respect the case at bar differs from those cited by complainant's counsel. The defendant is not 'claiming the right to a general inquisitorial examination of all the books, papers, and documents of his adversary, with the view to ascertain if, perchance, something may be found which will possibly aid it'; nor is it asking 'before the hearing to pry into the case of its adversary.' nor 'to see in advance of the trial evidence which the other side are going to produce,' nor 'calling upon its adversary to exhibit for inspection anything and everything in writing under the latter's control, which may assist the defendant'; nor is this an 'unnecessary inquisition into the contents of private papers by one who has no interest in them.' 'No 'complete disclosure of everything the complainant knows or believes in relation to the matter in question' is sought for, nor is this a 'general fishing excursion.' A particular document, whose existence is well known to both parties, and in fact to the general public, is specifically called for. It is described with a fullness (by date, description, and serial number) which leaves no doubt as to its identity. * * *

"The objection to the materiality of the document called for was considered generally on the former motion. It has now been inspected by the court, and as the result of such inspection it is enough to say that it is sufficiently germane to the issues raised in this case to warrant its offer in proof, so that it may form part of the record (either as admitted or excluded evidence), which is to go to the Supreme Court."

The decisions in the Edison Electric Light Company Cases were, in effect, that the court would not determine finally the question of the materiality of the documents called for by a subpœna duces tecum upon the refusal of the witness to produce them. It did, however, examine this question so far as to decide that:

"There is not found in the objection as to the materiality of the evidence sufficient to warrant the refusal of the officers of the corporation to obey the subpœna duces tecum, and to produce the documents, which are concededly in the hands of its counsel, subject to its orders, and under its control."

It was further held that the only way the court could pass intelligently upon the question of materiality, in a final sense, was by having the evidence before it, and that the proper procedure was for the witness to object to the exhibition of the documents before the examiner, and for the examiner to certify the objection to the court, and send therewith the document, whereupon the court will rule upon the objection.

From this review of the cases relied upon by the petitioners, I find nothing to support or warrant the practice that a party may apply to the clerk for a subpœna duces tecum under section 863 to take testimony de bene esse before a notary public, and may, in his discretion, either fill in himself, or ask the clerk to fill in, a direction to the witness to produce before the magistrate whatever books and papers he sees fit to call for, and that the witness is bound to produce them at the time and place named, or render himself liable to punishment for contempt. Such a practice, in my opinion, would be a violation of the spirit, if not of the letter, of the constitutional provision which secures to the individual protection against unwarrantable searches and seizures of his private papers, and of the legislative expressions of Congress as embodied in the statutes relating to this subject, as well as of the general rule, which the courts have ever adhered to, of guarding witnesses against the unnecessary production and inspection of their private papers. It is to be borne in mind, in this connection, that the compulsory production of books and papers in court, where all. questions as they arise can be submitted to and decided by the court, is very different from their compulsory production before a notary public under section 863, or an examiner under equity rule 67, where the magistrate has little power to afford protection to the witness. In the latter instance the practice cannot but lead to abuse, oppression, and injustice. The case at bar affords a good illustration of the evils which would result. We have here a subpœna duces tecum, signed by a notary public, directing the two witnesses named to produce before him substantially all the books of every nature of three corporations.

A party undoubtedly has the right to invoke the process of the court to compel the attendance of witnesses and the production of such papers as are material to his case; but neither the right of a party nor the power of the court extends beyond this. A party has no right, and the court has no power, to compel the production, either in court or before a magistrate, of the private papers of a witness which are not relevant and material to the case. Any practice which sanctions such a proceeding is unwarranted, and an infringement upon a fundamental personal right guarantied by the federal Constitution. The courts have always recognized this protection to the individual, secured by our organic law. Such recognition is seen in the distinction which is made between a subpœna ad testificandum and a subpœna duces tecum. The former is a process of right, while the latter is addressed to the discretion of the court. Discretion here does not mean that the court has power to refuse the compulsory production of a paper which is material evidence in the case, but that, before compelling its production by a subpœna duces tecum, it will sufficiently inquire into the mat-

ter to determine if the evidence appears to be material, and, if not satisfied on this point, will decline to issue the writ.

An important discussion of this subject is found in the report of the trial of Aaron Burr. The counsel for the defendant in that case moved the court for a subpœna duces tecum, directed to the President of the United States, calling for the production of certain papers. Mr. Wirt, in opposing the motion, said:

"The subpœna ad testificandum is a matter of right, and the prisoner might have demanded it from the clerk without the intervention of the court; but here is a motion for a subpœna duces tecum, to compel the President to produce certain papers of state, the materiality of which is not shown. I shall contend, first, sir, that the subpœna duces tecum is not a process of right, that the motion for it is a motion addressed to the discretion of the court, and that the court may award or withhold it as they see fit. In the next place, I shall contend that this discretion of the court should be controlled and determined only by the relevancy and materiality of the papers required."

Mr. Wickham, counsel for the defendant, interrupting Mr. Wirt, said:

"We admit that it is an application to the sound discretion of the court."

Chief Justice Marshall, in deciding the motion, said:

"This is said to be a motion to the discretion of the court. This is true."

In proceeding to discuss the nature of this discretion, the Chief Justice said:

"But the court has no right to refuse its aid to motions for papers to which the accused may be entitled, and which may be material to his defense. * * * If it be apparent that the papers are irrelative to the case, or that, for state reasons, they cannot be introduced into the defense, the subpœna duces tecum would be useless. But if this be not apparent, if they may be important in the defense, if they may be safely read at the trial, would it not be a blot in the page which records the judicial proceedings of this country if, in a case of such serious import as this, the accused should be denied the use of them?"

See Robertson's Report of Burr's Trial, vol. 1, pp. 136, 137, 182, 183, 184; Dillon's John Marshall, p. xxxviii, and note. For an instructive review of this general question, see Judge Cooley's Inviolability of Telegraphic Correspondence, 27 Am. Law Reg. 65, and Hitchcock's Inviolability of Telegrams, 2 Am. Bar Ass'n Rep. p. 93.

In all cases where Congress has legislated on this subject, it has recognized the distinction between a subpœna ad testificandum and a subpœna duces tecum, and has carefully restricted the issuance of the latter process.

Section 724 of the Revised Statutes provides that in the trial of actions of law the courts may, "on motion and due notice thereof," require the parties to produce books or writings which contain pertinent evidence "in cases and under circumstances where they might be compelled to produce the same by the ordinary rules of proceeding in chancery." Section 868 provides that, when a commission is issued for taking the testimony of a witness, the clerk shall issue a subpœna on application therefor. Section 869 provides that, when either party applies to any judge for a subpœna commanding the witness to produce papers or books in his possession, the judge, "on being satisfied, by the affidavit of the person applying or otherwise" that the paper

is in the witness' possession, and that the same, if produced, would be "competent and material evidence for the party applying therefor," may "order the clerk" to issue the subpœna.

These declarations by Congress are of the highest importance. They indicate the policy which the federal courts should follow in this important matter. Conceding that the courts have power to compel the production of books and papers under section 863, it cannot for a moment be presumed that Congress intended to authorize the exercise of such power, except under regulations and restrictions similar to those imposed by section 869. As was said in United States v. Tilden:

"This act, therefore, seems to show that Congress understood that this was the limit allowed for the compulsory production of books and papers under the system of examinations de bene esse then in force." 10 Ben. 581.

For these reasons, I am of opinion that the settled practice of this circuit is correct, and that a subpœna duces tecum should not issue, either under section 863 or equity rule 67, except by order of court, upon preliminary proof that the documents called for are in the possession of the witness and are prima facie competent and material evidence in the case. The court will not finally determine the question of materiality on such application, but it must be reasonably satisfied that the evidence is relevant and material.

The present application is wholly insufficient respecting the necessary preliminary proof. Upon the mere allegation that the evidence "is material and necessary for use in said suit," it asks that the two witnesses named, who are, respectively, the president and vice president of the defendant corporation, be ordered to produce—

"All books of account, minutes of meetings of stockholders, minutes of meetings of directors, minutes of meetings of committees, certificates of shares of stock, stock registers, stock ledgers, contracts and copies of the same, letter books, letters, and other papers of the Goodyear Shoe Machinery Company, of Hartford, Connecticut, and also all books of account, minutes of meetings of stockholders, minutes of meetings of directors, minutes of meetings of committees, certificates of shares of stock, stock ledgers, stock registers, contracts and copies of the same, letter books, letters, and other papers of the Goodyear Shoe Machinery Company, of Portland, Maine, and also all books and papers of the United Shoe Machinery Company that contain any reference to, and all that name, the Goodyear Shoe Machinery Company, of Hartford, Connecticut, and also all books and papers of the United Shoe Machinery Company that contain any reference to, and all that name, the Goodyear Shoe Machinery Company, of Portland, Maine, and all that name and all that refer to any machine manufactured under letters patent No. 459,036, and also all such that refer to such letters patent."

To compel these witnesses, upon the proof submitted, to bring before the examiner this mass of private books and papers, would be an oppressive, if not an unconstitutional, use of the power of the court, and an abuse of its process.

Petition denied, without prejudice to the filing of another petition in conformity with this opinion.