### WEST PUB. CO. v. EDWARD THOMPSON CO.

(Circuit Court, E. D. New York. February 23, 1907.)

EQUITY — EVIDENCE — COMPELLING PRODUCTION OF DOCUMENTS BY ADVERSE PARTY.

The ordinary procedure in equity to compel an adverse party to produce documents is by bill or cross-bill for discovery, on which the materiality of the documents as evidence may be determined, or by a subpoena duces tecum, and the court will not order the production of documents upon motion and an affidavit based solely on information and belief as to the contents of the documents desired, and especially where the moving party has unduly delayed making the application and the granting of it would interfere with the closing of the proofs within the time fixed by order of the court.

In Equity. On motion to require complainant to produce records.

William B. Hale, for complainant.
Walter Large (Charles Porterfield, of counsel), for defendant.

CHATFIELD, District Judge. This is an action to enjoin the alleged infringement of copyright. Both parties have been taking testimony before special examiners in several places. Upon a hearing before special examiner in the city of St. Paul, state of Minnesota, a witness employed as a shipping clerk for the complainant was questioned as to his methods of shipment of the various books published by the complainant. He testified that it was his custom, under instructions, to ship the first two copies of each volume published to the Librarian of Congress at Washington, D. C. On cross-examination he testified that certain books, in the form of express receipt books, were kept, showing the delivery of the various editions by mail, express, and messenger. The witness was thereupon asked if he could produce these books, and, discussion ensuing as to the possibility of bringing them all into court the following morning, he was asked if he could bring the books for the year 1893. This he testified that he thought he could do. The defendant thereupon notified the complainant that it would require it to produce upon the following morning, for the purpose of the further cross-examination of the witness then on the stand, all the books and records described by him showing shipments during the year 1893. Complainant's counsel stated that they had received no notice to produce said books prior to this time. Thereupon the hearing was adjourned until the following morning. Upon the following day the witness stated that he had not looked for the records, because the general manager of the complainant company had instructed him not to remove any of the office records from the office. Nothing further was done (this examination having been held upon the 21st day of June, 1904) until the 11th day of January, 1907, when the defendant company served affidavits and a notice of motion, asking this court to compel the complainant to produce the shipment records, above referred to, and the shipping clerk, who had testified as to the records, for further cross-examination in the city of Brooklyn. Affidavits in opposition to the motion were submitted, and the question was considered, in view of the fact that the time of defendant to take testimony began June 11, 1905, and its time for the taking of testimony was to expire upon the 1st of February, 1907; that the defendant was to have until February 15th, if necessary, to put in documentary evidence; and that the complainant should then have not more than 60 days in rebuttal, at which time the testimony was to be closed and the case set down by the court for argument. This distribution of time had been made by order of court, upon motion, some weeks previous to the making of the present motion. Upon the argument of the motion it appeared that the production and examination of the books in question were desired, not for the purpose of prying into the business of the complainant corporation, but to investigate the shipping records, with a view to testing the accuracy of the shipping clerk's testimony that the first two copies of each volume had been mailed to the Librarian of Congress, to comply with the copyright law, before

the distribution or delivery of other copies of that particular book to other parties. The defendant's motion papers allege, on information and belief, that an examination of the records would show that copies were furnished to other people, of many of said books, before the two copies required by the copyright law were placed in the mails, directed to the Librarian of Congress. There is nothing in the affidavits of the defendant on this motion showing knowledge that such alleged facts would appear from an examination of the books, and no source of information or ground of belief is shown.

This action is brought in equity. Section 724 of the Revised Statutes, originating in the judiciary act of September 24, 1789 (1 Stat. 82, c. 20 [U. S. Comp. St. 1901, p. 583]), provides for the production and examination of documents in actions at law, but in equity the chancery rules and procedure have been left unchanged by Congress; and it must be assumed that Congress has not considered it necessary to legislate with reference thereto. Bischoffsheim v. Brown (C. C.) 29 Fed. 342. Many cases have been cited by both parties bearing upon the various points involved in this motion, but in two of these cases the power and duties of a court are so exactly set forth that they are considered sufficient to illustrate the application of the rule. The first of these cases is that of Bischoffsheim v. Brown, supra, which was brought in the Southern District of New York. Judge Wallace in his opinion says:

"This is a motion on behalf of the defendants Seligman & Brown to compel production by the plaintiff for inspection of books, papers, and documents described in Exhibit A, annexed to the moving papers. The proofs in the cause are being taken orally before an examiner, and certain witnesses for the plaintiff have testified that the papers and documents are under the control of the plaintiff. The papers specified in Exhibit A are not any particular book, document, or writing, but comprise all or a great number of several classes of papers, some of which may possibly be found when examined to contain evidence advantageous to the defendant in controverting the plaintiff's case or supporting their own case. The motion seems to have been made and has been argued upon the theory that either party to a suit in equity may call upon his adversary to exhibit for inspection anything and everything in writing under the latter's control which may assist the party who makes the call. The case of Coit v. North Carolina Gold Amalgamating Co. (C. C.) 9 Fed. 577, is cited as an authority in this direction. Notwithstanding this authority, it must be held that such practice cannot be sanctioned."

The court then goes on to speak of a bill or cross-bill for discovery of papers the existence of which the other party must admit or deny. Thereupon the production or examination may be ordered by the court, and the materiality of the evidence considered. "This is the ordinary and only practice to compel the production of documents except under special circumstances, as where deeds or other papers contested as false or forged are ordered to be brought into court for inspection." The court then discusses section 724 of the Revised Statutes and the procedure in actions at law, and on the subject of a subpœna duces tecum uses the following language:

"Parties to suits in equity as well as in suits at law are now competent witnesses in the courts of the United States by statute, and may now be examined at the instance of their adversary. As a witness a party can be

compelled by a subpœna duces tecum to produce books, documents, and papers in his possession the same as any other witness. Merchants' Nat. Bank v. State Bank, 3 Cliff. 201, Fed. Cas. No. 9,448."

The court then decided that the evidence desired was not material, that none of the remedies were applicable, and disposed of the cases upon the ground that the witnesses would not be compelled to produce these books, even if a motion could properly have been made therefor.

The subsequent case illustrative of the principles above referred to is that of Kirkpatrick v. Pope Manufacturing Co. (C. C.) 61 Fed. 46, which was also a case in this circuit, in the district of Connecticut. The court there refers to the application of section 724, Rev. St., in a suit at law, and the power of a court of chancery to compel the production of papers and records to show testimony material to some issue in the case, saying that such a motion "is addressed to the discretion of the court, which is to be governed by the practice in such cases in chancery. Gregory v. Railroad Co. (C. C.) 10 Fed. 529. The authority should be exercised only in cases where the relief might have been had by a bill of discovery, and as a substitute for that proceeding. Finch v. Rikeman, 2 Blatchf. 301, Fed. Cas. No. 4,788." The opinion then discusses the power and uses of a subpœna duces tecum, or a notice to produce. It is explained that a notice to produce can only lay the foundation for the introduction of secondary evidence if the papers are not brought into court. "That the process of subpœna duces tecum is a convenient, efficient, and proper method for bringing the paper into court is beyond dispute in this circuit." Edison Electric Light Co. v. U. S. Electric Lighting Co. (C. C.) 45 Fed. 59, and other cases there cited. The use of the subpœna and notice to produce, however, is limited by the opinion in the Kirkpatrick Case to suits in equity. In actions at law, section 724, Rev. St., is said to provide the corresponding remedy at law, and the court, considering that the use of a subpœna duces tecum or of a notice to produce would either be unauthorized or unsatisfactory in its results, granted the motion under section 724.

Additional cases directly approving of these decisions and of the rules therein set forth are Clarke v. Eastern Building & Loan Ass'n (C. C.) 89 Fed. 779; Robbins v. Davis, 1 Blatchf. 238, Fed. Cas. No. 11,880; Merchants' Nat. Bank v. State Nat. Bank, 3 Cliff. 201, Fed. Cas. No. 9,448; Paine v. Warren (C. C.) 33 Fed. 357; Edison Electric Light Co. v. United States Electric Lighting Co. (C. C.) 44 Fed. 294; Ryder v. Bateman (C. C.) 93 Fed. 31. And as to the power of a subpœna duces tecum and of a federal court of equity to compel the attendance of a witness in the district where testimony is being taken, when that district is not the one in which the suit is pending, see Johnson Steel Street-Rail Co. v. North Branch Steel Co. (C. C.) 48 Fed. 191; Northern Pac. Ry. Co. v. Keyes (C. C.) 91 Fed. 47. Upon the reasoning shown by these cases, it appears to this court that a notice to produce may not be satisfactory, in that secondary evidence of the contents of these books is plainly not at hand. A subpœna duces tecum will not run to the city of St. Paul from the Brooklyn court. Rev. St. § 876 [U. S. Comp. St. 1901, p. 667]. It is admitted on this motion

that an application for such a subpœna would have to be made to the United States Circuit Court in the District of Minnesota.

The proper remedy, if the moving party can sufficiently aver the existence of the testimony which is sought for in order to show its existence and materiality, would seem to have been by a bill of discovery. The court is unwilling to order the production of the books in question upon an affidavit based solely upon information and belief as to the contents. It is especially unwilling to do anything that would have the effect of preventing the closing of the taking of testimony and the submission of the case at the present time, in view of the fact that this application was not made for a period of 3½ years, and not until after the final order had been entered directing the closing of the taking of testimony by both parties; this order having been made upon a full argument by both sides as to their needs and desires.

If the defendant can bring itself within the proper allegations of a bill of discovery, it would seem that this method was available, and should have been taken when the defendant determined that it desired such an examination as is asked for by this motion. On January 11, 1907, it may have been too late to apply for such a bill, but for that reason, also, it seems that the court should not attempt to cure the delay by a method which is not approved by the decisions.

The motion will be denied, without costs.