## BROWNSON v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
April 24, 1929.

Rehearing Denied June 29, 1929.

No. 8202.

Leland Hazard, of Kansas City, Mo. (David R. Derge and P. E. Reeder, both of Kansas City, Mo., R. H. Overbaugh, of New York City, and Winger, Reeder, Barker, Gumbiner & Hazard, of Kansas City, Mo., on the brief), for appellant.

William L. Vandeventer, Asst. U. S. Atty., of Kansas City, Mo., and John R. Wheeler, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Roscoe C. Patterson, U. S. Atty., of Kansas City, Mo., on the brief), for the United States.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and MUNGER, District Judge.

BOOTH, Circuit Judge. The facts involved in the present appeal are few and undisputed. During an investigation and hearing being held in Kansas City, Mo., in January, 1928, by the Commissioner of Internal Revenue, through his agent, relative to the tax liability of Frank De Mayo and Bessie De Mayo, his wife, for the years 1924–1926 inclusive, a summons signed by said agent was served upon appellant requiring him to appear and testify in said matter, and to bring with him any and all books, papers, and documents in his possession showing transactions for, with, or on behalf of said Frank De Mayo and Bessie De Mayo, and especially any papers, receipts, or documents pertaining to the receipt by telegraph of $500 by Frank De Mayo from Denver, Colo., on or about February 16, 1926. Appellant was the city superintendent of the Western Union Telegraph Company at Kansas City, Mo. He appeared at the time and place specified, but did not produce the documents requested. This failure to obey the summons was thereafter reported to the United States District Court for the Western District of Missouri by the United States District Attorney in a petition which prayed that a writ of attachment be issued to bring the appellant before the court for such action as might be deemed proper. An order of attachment was issued. Appellant appeared before the court, a hearing was had, and an order was made requiring appellant to appear before the Internal Revenue Agent and to produce the documents requested. Owing to certain inadvertent omissions in the order, a later order was issued February 23, 1928. This order, after reciting the facts, contained the following: "It is therefore, ordered by the Court that the said G. W. Brownson forthwith appear before the said Harry D. Beach and produce all records of the Western Union Telegraph Company showing the receipt of Five Hundred ($500.00) Dollars by Frank De Mayo, which was wired to him by way of the Western Union Telegraph Company from Denver, Colorado, on or about February 16, 1926, and that he stand committed in the common jail of Jackson County, Missouri, at Kansas City, unless and until he complies with the foregoing order of this court, to which order and commitment the said G. W. Brownson excepts." The present appeal was taken from this order.

At the outset the question of jurisdiction, though not raised by counsel, yet suggests itself by reason of the form of the order appealed from. Viewed as an order of commitment for contempt its finality may well be doubted. Its character might be called conditional, alternative, or anticipatory nisi. Such orders are generally held not appealable. 13 C. J. § 156, pp. 99, 100; Jones' Adm'r v. Craig, 127 U. S. 213, 8 S. Ct. 1175, 32 L. Ed. 147; City of Paducah v. East Tenn., etc., Co., 229 U. S. 476, 33 S. Ct. 816, 57 L. Ed. 1286. And this is especially true if the order involves possible punishment for contempt. Semrow v. Semrow, 26 Minn. 9, 46

N. W. 446; Brinkley v. Brinkley, 47 N. Y. 40; Sherwood v. Sherwood, 32 Conn. 1; Cherry v. Cherry, 253 Mass. 172, 148 N. E. 570; Eure v. Tayler, 126 Miss. 155, 88 So. 514.

The order under discussion is, however, dual in its nature. It first unconditionally orders the witness to appear and testify and to produce certain papers; it secondly commits the witness to jail conditionally. We think that for the purpose of determining appealability the first part of the order, which is complete in itself, should alone be considered. That such an order is appealable we think is established. Perlman v. United States, 247 U. S. 7, 38 S. Ct. 417, 62 L. Ed. 950; Ellis v. Interstate Commerce Commission, 237 U. S. 434, 442, 35 S. Ct. 645 (59 L. Ed. 1036); United States v. First National Bank of Mobile (D. C.) 295 F. 142, affirmed 267 U. S. 576, 45 S. Ct. 231, 69 L. Ed. 796. In the case last cited the Supreme Court entertained an appeal from an order of the District Court directing a witness to appear and testify and to produce books and papers in a case very similar to the case at bar. The affirmance of the order necessarily involved a holding that the order was appealable.

█ We turn to the merits. The statutory provisions under which authority is claimed by appellee for the proceedings in the present case are as follows:

Section 1247, title 26, U. S. C. (26 USCA § 1247). "Examination of books, papers, and records; taking testimony.—The Commissioner [of Internal Revenue], for the purpose of ascertaining the correctness of any return or for the purpose of making a return where none has been made is hereby authorized, by any revenue agent or inspector designated by him for that purpose, to examine any books, papers, records, or memoranda bearing upon the matters required to be included in the return, and may require the attendance of the person rendering the return or of any officer or employee of such person, or the attendance of any other person having knowledge in the premises, and may take his testimony with reference to the matter required by law to be included in such return, with power to administer oaths to such person or persons."

This provision first appeared in section 1305 of the Revenue Act of 1918 (40 Stat. 1142). It was re-enacted as section 1308 in the Revenue Act of 1921 (42 Stat. 310), as section 1004 of the Revenue Act of 1924 (43 Stat. 340), as section 1104 of the Revenue Act of 1926 (44 Stat. 113), and again as section 618 of the Revenue Act of 1928 (45 Stat. 878).

Section 2617, 26 USCA. "Jurisdiction of Courts—(a) If any person is summoned under the internal-revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data."

The equivalent of this provision appeared in section 1318 of the Revenue Act of 1918 (40 Stat. 1148). It again appeared in section 1310 of the Revenue Act of 1921 (42 Stat. 310); and again as section 1025(a) in the Revenue Act of 1924 (43 Stat. 348). It also appears as section 1122(a) in the Revenue Act of 1926 (44 Stat. 121); and as section 617(a) in the Revenue Act of 1928 (45 Stat. 877).

Other relevant provisions of the statutes will be referred to later.

It is the contention of appellant that the statutes above quoted do not expressly authorize the Commissioner of Internal Revenue to require the production of the books and papers of any person except the one whose tax liability is being investigated; that if Congress had intended to give the Commissioner such authority it would have used explicit language to that effect. It is contended further that where such authority has been given as to other cognate matters, explicit language has been used. Section 94, title 26, U. S. C. (26 USCA § 94), is cited. That section contains the following provision:

"And if any person, on being notified or required as aforesaid, shall refuse or neglect to render such list or return within the time required as aforesaid, or whenever any person who is required to deliver a monthly or other return of objects subject to tax fails to do so at the time required, or delivers any return which, in the opinion of the collector, is erroneous, false, or fraudulent, or contains any undervaluation or understatement, or refuses to allow any regularly authorized Government officer to examine the books of such person, firm, or corporation, it shall be lawful for the collector to summon such person, or any other person having possession, custody, or care of books of account containing entries relating to the business of such person or any other person he may deem proper, to appear before him and produce such books at a time and place named in the summons, and to give testimony or answer

interrogatories, under oath, respecting any objects or income liable to tax or the returns thereof."

That provision was originally contained in section 3173, Revised Statutes, and related to matters somewhat different from that now under discussion. However, the provision has latterly been expressly made applicable to matters such as the present one.

By section 1244, title 26, U. S. C. (26 USCA § 1244), it is provided: "All administrative, special, or stamp provisions of law, including the law relating to the assessment of taxes, so far as applicable, are hereby extended to and made a part of this Act." This same provision appears in the Revenue Acts of 1918, § 1305 (40 Stat. 1142); 1921, § 1300 (42 Stat. 308); 1924, § 1000 (43 Stat. 339); and 1926, § 1100 (44 Stat. 111).

It is further contended by appellant that section 94, title 26, U. S. C. (R. S. § 3173), above quoted, does not itself authorize the government official, in investigating the return of a specified person, to require a third person to produce his own books. We are unable to agree with these several contentions of counsel for appellant.

The history of the law of evidence lends no support to such contentions. For more than 300 years it has been a maxim that the public has a right to every man's evidence. Privileges of exemption are exceptions to the rule. Wigmore on Evidence, §§ 2190–2193. See Blair v. United States, 250 U. S. 273, 39 S. Ct. 468, 63 L. Ed. 979; Consolidated Rendering Co. v. Vermont, 207 U. S. 541, 28 S. Ct. 178, 52 L. Ed. 327, 12 Ann. Cas. 658; Wilson v. United States, 221 U. S. 361, 31 S. Ct. 538, 55 L. Ed. 771, Ann. Cas. 1912D, 558; In re Meador, 16 Fed. Cas. 1294, No. 9375.

This testimonial duty to attend and disclose applies equally to the production of documents; and the process for documents will be implied wherever testimonial compulsion in general is predicated by a statute. Wigmore on Evidence, § 2193, and note.

Congress, we think, has made no such distinctions as counsel for appellant suggests in the authority granted to various investigating bodies. On the contrary, Congress in passing enactments granting authority to such bodies to take evidence, and the Supreme Court in construing such enactments, have taken the broad view that when a duly authorized governmental agency is making an investigation and is authorized to summon witnesses and require the production of books and papers, such authority extends not only to the production of the books and papers of the party or corporation under investigation, but also to the production of the relevant books and papers of third parties or corporations, all subject, of course, to the limitations and conditions contained in the Fourth and Fifth Amendments to the United States Constitution.

Hale v. Henkel, 201 U. S. 43, 26 S. Ct. 370, 50 L. Ed. 652, was an appeal from an order of a United States Circuit Court dismissing a writ of habeas corpus. Hale had been served with a subpœna duces tecum to testify before a federal grand jury which was investigating the corporation of which he was secretary-treasurer and to produce books and papers of his corporation. He refused and was committed for contempt. The judgment was affirmed.

Wilson v. United States, 221 U. S. 361, 31 S. Ct. 538, 55 L. Ed. 771, Ann. Cas. 1912D, 558, was a writ of error to review a judgment of a United States Circuit Court committing Wilson for contempt. A federal grand jury was investigating alleged violations of sections 5440 and 5480, Revised Statutes (18 USCA §§ 88, 338), by Wilson and others. A subpœna duces tecum addressed to the corporation was served on Wilson to produce a letterpress copy book of the corporation of which he was president. He refused and was committed for contempt. In affirming the judgment, the court said (page 382 [31 S. Ct. 545]):

"What then is the status of the books and papers of a corporation, which has not been created as a mere instrumentality of government, but has been formed pursuant to voluntary agreement and hence is called a private corporation? They are not public records in the sense that they relate to public transactions, or, in the absence of particular requirements, are open to general inspection or must be kept or filed in a special manner. They have reference to business transacted for the benefit of the group of individuals whose association has the advantage of corporate organization. But the corporate form of business activity, with its chartered privileges, raises a distinction when the authority of government demands the examination of books. That demand, expressed in lawful process, confining its requirements within the limits which reason imposes in the circumstances of the case, the corporation has no privilege to refuse. It cannot resist production upon the ground of self-crimination. Although the object of the inquiry may be to detect the abuses it has committed, to discover its violations of law and to inflict punishment by forfeiture of franchises or otherwise,

it must submit its books and papers to duly constituted authority when demand is suitably made. · This is involved in the reservation of the visitatorial power of the State, and in the authority of the National Government where the corporate activities are in the domain subject to the powers of Congress."

(Page 385 [31 S. Ct. 546].) : "Nor is it an answer to say that in the present case the inquiry before the grand jury was not directed against the corporation itself. The appellant had no greater right to withhold the books by reason of the fact that the corporation was not charged with criminal abuses. That, if the corporation had been so charged, he would have been compelled to submit the books to inspection, despite the consequences to himself, sufficiently shows the absence of any basis for a claim on his part of personal privilege as to them; it could not depend upon the question whether or not another was accused. The only question was whether as against the corporation the books were lawfully required in the administration of justice. When the appellant became president of the corporation and as such held and used its books for the transaction of its business committed to his charge, he was at all times subject to its direction, and the books continuously remained under its control. If another took his place his custody would yield. He could assert no personal right to retain the corporate books against any demand of government which the corporation was bound to recognize." See Dreier v. United States, 221 U. S. 394, 31 S. Ct. 550, 55 L. Ed. 784, to same effect.

Wheeler v. United States, 226 U. S. 478, 33 S. Ct. 158, 57 L. Ed. 309, was an appeal and writ of error to review denial of writ of habeas corpus and commitment for contempt by a United States District Court. A federal grand jury was investigating Wheeler and another for violation of the statute prohibiting the use of the United States mail in a scheme to defraud. A subpœna duces tecum was issued to the corporation, Wheeler & Shaw, Incorporated, to produce books and papers. The corporation had gone out of existence. Wheeler refused. Commitment for contempt followed. Judgment was affirmed.

Essgee Co. of China v. United States, 262 U. S. 151, 43 S. Ct. 514, 67 L. Ed. 917, was an appeal and writ of error to review an order of a United States District Court denying a petition for return of papers produced by an officer of two corporations before a federal grand jury in response to a subpœna

duces tecum, addressed to the corporations requiring them to appear and produce named papers. The investigation before the grand jury was as to charges of fraud in importations by the two corporations. In affirming the order denying return the court quoted with approval from Wilson v. United States, supra, as to the status of corporate books and papers.

We think that the power granted to the Commissioner of Internal Revenue by the statutes above quoted to require the attendance of witnesses and the production of books and papers in matters properly under investigation by him is similar to the power vested by analogous statutes in federal grand juries to perform similar acts, such as are illustrated by the cases above cited; and that the statutes involved, granting such power to the Commissioner, should receive a like liberal construction in view of the like important ends sought by the government.

We have been cited to but one case which appears to be directly in point: United States v. First National Bank of Mobile (D. C.) 295 F. 142. That case arose under the Revenue Act of 1921, but the provisions of that act and of the later acts of 1924 and 1926 are substantially the same so far as they relate to the questions now being considered. In the case last cited the tax liability of William J. Hanlon and wife was being investigated by the authorized agents of the Commissioner of Internal Revenue. The bank was subpœnaed to appear with its books and papers bearing upon the tax liability of Mr. Hanlon and his wife. The bank refused. The court after a hearing made an order requiring the bank to appear and furnish the information. In its opinion the court, after citing and quoting from the statutes heretofore given, said:

"The petition sets out that the said Hanlon and his wife have not made full, true, and correct statements of their respective incomes of the years 1918, 1919, 1920, 1921, and 1922, and that the ledgers and other books of the bank containing the accounts of the said Hanlons will be of material assistance to the United States in arriving at the true and correct incomes of said individuals of the respective years; that summons to appear and testify and produce the books had been served on D. P. Bester, Jr., as president of the bank; and that the said bank and its officers had failed to appear at the time and place designated in the summons, and they now refuse to appear and permit the duly authorized agents of the internal revenue of the United

States to have access in any manner to the records and accounts of said bank—and prays for the assistance of the court to require the bank officers and employees to testify and the bank to produce its books and accounts.

."Said bank refuses to testify and produce the books, and contends that it is protected by the Fourth Amendment to the Constitution from doing so. As I understand the Fourth Amendment, it protects the parties to criminal prosecution against unreasonable searches and seizures of their papers, and I do not understand this to authorize a third party, who has books and papers which may be relevant to the inquiry, to refuse to produce such books and papers because of this amendment. This is not a question of a search and seizure of a party's books and papers, but of whether a witness who has information as to a party's dealings may be required to testify to those facts, and produce book entries as to such entries in connection with and supporting such testimony."

The case was appealed to the Supreme Court. That court affirmed the order of the court below (267 U. S. 576, 45 S. Ct. 231, 69 L. Ed. 796) on the authority of Essgee Co. of China v. United States; Hale v. Henkel; Wheeler v. United States, and Wilson v. United States, above cited.

It is suggested by counsel for appellant that it does not appear that the order made by the District Court in United States v. First National Bank of Mobile, supra, required the production of the books of the bank. We think that this does clearly appear both by the excerpts from the opinion of the court above quoted and by the fact that the affirmance by the Supreme Court was based upon the holdings in the Essgee, Hale, Wilson, and Wheeler Cases—all of which involved the production of books and papers and not merely the giving of testimony.

The affirmance, based expressly upon those cases, establishes, we think, the proposition that the power of the Commissioner of Internal Revenue, under the statutes already cited, to examine corporate books and papers is analogous to the power of the federal grand juries in the cases cited; and establishes further that the fact that the corporation whose books and papers are required to be produced is not under investigation is immaterial.

Our conclusion is that the steps taken by the Commissioner and by the court to secure the desired evidence were authorized and regular.

Order affirmed.