## FALSONE v. UNITED STATES.

### No. 14559.

United States Court of Appeals Fifth Circuit.

June 26, 1953.

Hugh C. Macfarlane, G. L. Reeves and M. Craig Massey, Tampa, Fla., for appellant.

Matt O'Brien, Asst. U. S. Atty., Tampa, Fla., for appellee.

Reeves, Allen & Dell, Tampa, Fla., of counsel for amici curiæ.

Before HOLMES, BORAH and RIVES, Circuit Judges.

RIVES, Circuit Judge.

An Internal Revenue agent acting under authority of 26 U.S.C.A. § 3614(a)[1], served appellant, a certified public accountant, with summons to appear before him and testify in the matter of the tax liability of Salvatore Italiano and his wife, Maria, for the years 1947 to 1951, inclusive, and to bring with him the following books and papers:

"All books, papers, records or memoranda in your files relating to:

"(1) Individual income tax returns of Salvatore Italiano and Maria Italiano for the years 1940 to 1946, inclusive.

"(2) Corporation income tax returns of Anthony Distributors, Inc. for the years 1940 to 1951, inclusive."

In response to the summons, appellant appeared at the agent's office but refused to produce the books, papers, records and memoranda called for in the summons or to testify regarding said documents.

The United States then filed in the District Court a petition to enforce the summons under 26 U.S.C.A. § 3633(a).[2] Upon an *ex parte* hearing, the District Court entered an order directing the appellant to obey the summons and to retain all of said documents in his possession for compliance with the summons or such other disposition as the court might direct.

A motion to vacate that order and to quash the summons of the Internal Revenue agent was filed by the appellant. After a hearing, the District Court denied that motion and ordered the appellant to appear before another special agent of the Bureau of

1. "§ 3614. *Examination of books and witnesses*

"(a) *To determine liability of the taxpayer.* The Commissioner for the purpose of ascertaining the correctness of any return or for the purpose of making a return where none has been made, is authorized, by any officer or employee of the Bureau of Internal Revenue, including the field service, designated by him for that purpose, to examine any books, papers, records, or memoranda bearing upon the matters required to be included in the return, and may require the attendance of the person rendering the return or of any officer or employee of such person, or the attendance of any other person having knowledge in the premises, and may take his testimony with reference to the matter required by law to be included in such return, with power to administer oaths to such person or persons." See 26 U.S.C.A. 3615 for Collector's similar authority to summon witnesses and require the production of books of account.

2. "§ 3633. *Jurisdiction of district courts* "(a) *To enforce summons.* If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data."

See 26 U.S.C.A. § 3615(e) for enforcement of Collector's summons.

Internal Revenue, to produce the documents requested, and to give testimony pursuant to the summons. From that order this appeal is prosecuted.

[1] Although the appellee has not moved to dismiss the appeal, it is nevertheless incumbent upon this Court to ascertain whether the order of the District Court is final and appealable, and, hence, whether this Court has jurisdiction. The question is not without difficulty; it has apparently been answered in the affirmative by the Eighth Circuit [3] and by the Ninth Circuit [4], while a closely related question, the summons having been issued by the Collector under 26 U.S.C.A. § 3615, has been answered in the negative by the Seventh Circuit [5]. In a similar proceeding, an appeal from an order entered earlier than the reported opinion in Torras v. Stradley, D.C. Ga., 103 F.Supp. 737, the present writer has heretofore denied supersedeas, because he was then of the opinion that the order of the District Court was not final.

It is settled that an order of the District Court denying a motion to quash a subpoena *duces tecum* requiring one to appear with papers and testify before a grand jury is not a final and appealable decision. Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783. The power granted to the Commissioner of Internal Revenue by 26 U.S.C.A. § 3614 is inquisitorial in character and has been compared to the power vested in federal grand juries. Bolich v. Rubel, 2d Cir., 67 F.2d 894, 895; Brownson v. United States, 8 Cir., 32 F.2d 844, 848. An important difference, however, is that, while the reports of grand juries are made to the court, the results of tax investigations are reported to the Commissioner and it is for him to determine what action, if any, is required under the law in view of the facts revealed.

Judge Learned Hand has indicated that the distinction to be observed is between orders which are merely interlocutory steps in judicial proceedings and are not appealable and court orders ancillary to an administrative proceeding and final because they complete the court's action. Capital Company v. Fox, 2d Cir., 85 F.2d 97, 99, 106 A.L.R. 376. Professor Moore seems to follow the same distinction. Moore's Commentary on the United States Judicial Code (1949), pages 501, 502.[6] In Cobbledick v. United States, supra, 309 U.S. at page 330, 60 S.Ct. at page 543, 84 L.Ed. 783, the Supreme Court recognized the difference between a proceeding "self-contained, so far as the judiciary is concerned" where the District Court's direction to testify " 'is the end of a proceeding begun against the witness' " and controversies "arising out of court proceedings unrelated to any administrative agency."

In First National Bank of Mobile v. United States, 267 U.S. 576, 45 S.Ct. 231, 69 L.Ed. 796, the Supreme Court affirmed an order of the District Court, United States v. First National Bank of Mobile, D.C.Ala., 295 F. 142, requiring an employee of a bank to appear before an Internal Revenue Agent and to testify and produce books and records as to the transactions of one of the bank's depositors; and, as the Eighth Circuit has aptly commented, "The affirmance of the order necessarily involved a holding that the order was appealable." Brownson v. United States, supra, 32 F.2d at page 846. We hold, therefore, that the order in the present case was final and that this Court has jurisdiction.

The pleadings which frame the issues for our decision consist of the petition to enforce the summons and the motion to vacate the *ex parte* order and to quash the summons. Attached to the petition was an af-

---

3. Brownson v. United States, 8 Cir., 32 F.2d 844.

4. Martin v. Chandis Securities Co., 9 Cir., 128 F.2d 731.

5. Jarecki v. Whetstone, 7 Cir., 192 F.2d 121.

6. That distinction might explain cases where the administrative agency was proceeding under other statutes, such as Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614; Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424; N. L. R. B. v. Anchor Rome Mills, 5 Cir., 197 F.2d 447. Compare the enforcement of agency subpoenas under the Administrative Procedure Act, 5 U.S.C.A. § 1005 (c).

fidavit of the agent stating that, in his official capacity at the direction of the Commissioner of Internal Revenue, he was investigating the tax returns of Salvatore Italiano and his wife, Maria, for the years 1947 through 1951 for alleged evasion of income tax; that his investigation had revealed that from the years 1942 through 1951 the taxpayers reported income of approximately $303,000.00, while their expenditures during that period had been in the approximate amount of $466,000.00; that it is necessary to make a determination of their income by means of the so-called net worth-expenditures method [7], and in order to determine net worth as of January 1, 1947, it is necessary to reconstruct the financial history of the taxpayers in prior years; that the official records of the Bureau of Internal Revenue disclosed that at times during the period 1942 through 1951 Salvatore Italiano, as General Manager of Anthony Distributors, Inc., engaged in the purchase and sale of beverages over the O. P.A. Ceiling Prices to his personal benefit.

Appellant's sworn motion and affidavit denying the District Court's right to issue the order enforcing the summons is based essentially on the following facts and circumstances therein stated:

1. The appellant, Frank J. Falsone, is a Certified Public Accountant of the State of Florida and enrolled to practice before the Treasury Department; and Salvatore Italiano, Maria Italiano and Anthony Distributors, Inc., are "clients" of his whom he represents in federal tax matters.

2. That the books, papers, records and memoranda in appellant's files ordered produced by the District Court are of two classifications:

a. Those which are the personal and private books, papers, records and memoranda of his clients entrusted to him for the purpose of enabling him to prepare their tax returns; and the return of these has now been demanded by the clients;

b. Those which are the work papers and work products of the appellant based on information given to the appellant by his clients.

3. Concerning the information and documents for some of the years requested:

a. The statute of limitations has run.

b. The returns have once been audited and fully examined by the Internal Revenue Bureau and the taxpayers have paid all taxes found to be due by said examinations and audits.

In considering appellant's contentions based on privilege, we make two preliminary assumptions in favor of the appellant: 1. That the conduct of investigations under this statute is subject to the same testimonial privileges as judicial proceedings [8]; 2. That since the "client" is not a party, the agent or accountant may claim the privilege in his behalf [9].

---

7. See United States v. Johnson, 319 U.S. 503, 517, 63 S.Ct. 1233, 87 L.Ed. 1546; Kenney v. Commissioner, 5 Cir., 111 F. 2d 374; Pollock v. United States, 5 Cir., 202 F.2d 281; Montgomery v. United States, 5 Cir., 203 F.2d 887.

8. In McMann v. Securities & Exchange Commission, 2d Cir., 87 F.2d 377, 378, 109 A.L.R. 1445, Judge Learned Hand said: "Therefore, although we assume, as we do, that the conduct of investigations under these statutes is subject to the same testimonial privileges as judicial proceedings, it will not serve McMann; he must erect a new privilege ad hoc."

9. "Furthermore, the privilege not being the attorney's but the client's, the *attorney* is not justified (when the client is a party to the cause) in refusing to obey a ruling (though erroneous) against the privilege; the client is the one to protect himself by appellate proceedings * * *." 8 Wigmore on Evidence (3rd ed.), Sec. 2321, p. 626.

See also 58 Am.Jur., Witnesses, Secs. 519, 520, id. Secs. 48 and 49; Rogers v. United States, 340 U.S. 367, 370, 71 S. Ct. 438, 95 L.Ed. 344.

"It follows, then, that *when the client himself would be privileged* from production of the document, either as a party at common law, or as a third person claiming title, or as exempt from self-crimination, the attorney having possession of the document is not bound to produce; and such has invariably been the ruling. On the other hand, if the *client would be compellable* to produce, either by motion or by subpoena or by bill of discovery, then

The taxpayer is required to keep records, 26 U.S.C.A. § 54(a) and the Commissioner, for the purpose of ascertaining the correctness of any return, is authorized by any officer or employee of the Bureau to examine the taxpayer's books and records and to require the attendance of the person rendering the return and the taking of his testimony, 26 U.S.C.A. § 3614. (Footnote 1, supra). Statutes granting such authorities have been held constitutional as against the contentions that they provide for unreasonable searches and seizures and compel the taxpayer to be a witness against himself. Annotation 103 A.L.R. 523; 47 Am. Jur., Searches and Seizures, Sec. 62; 51 Am.Jur., Taxation, Sec. 671; see also Bolich v. Rubel, supra; Shushan v. United States, 5 Cir., 117 F.2d 110, 117, 133 A.L.R. 1040; Nicola v. United States, 3 Cir., 72 F. 2d 780, 784; Stillman v. United States, 9 Cir., 177 F.2d 607, 617; cf. United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210; Shapiro v. United States, 335 U.S. 1, 32, 68 S.Ct. 1375, 92 L.Ed. 1787.

■ The books and papers of a taxpayer, even though received by an attorney for purposes of consultation, cannot be regarded as privileged communications. (Footnote 9, supra). Grant v. United States, 227 U.S. 74, 79, 33 S.Ct. 190, 57 L. Ed. 423; 58 Am.Jur., Witnesses, Sec. 501. According to the last cited text, "The reason is obvious; the administration of justice could easily be defeated if a party and his counsel could, by transferring·from the one to the other important papers required as evidence in a cause, thereby prevent the court from compelling the production of important papers on a trial." Or, as more succinctly stated, "If documents are not privileged while in the hands of a party, he does not make them privileged by merely handing them to his counsel." Edison Electric Light Co. v. U. S. Electric Lighting Co., C.C.N.Y., 44 F. 294, 297; Id., 45 F. 55. It seems clear, therefore, that, even if we should consider the relation between a taxpayer and his certified public accountant as

the attorney is equally compellable, if the document is in his custody, to produce under the appropriate procedure." 8 Wig-

confidential as that between client and attorney, the accountant would, nevertheless, be required to produce the books and records of the taxpayer.

■ The only other documents claimed to be in possession of the appellant and concerning which he might be required to testify are his work papers and notes. The terms of the subpoena are broad enough to require the production of such work papers and notes and, if it should appear to this Court that the subpoena is too broadly drawn, it may be modified accordingly. N. L. R. B. v. Anchor Rome Mills, Inc., 5 Cir., 197 F.2d 447, 449; Jackson Packing Co. v. N. L. R. B., 5 Cir., 204 F.2d 842. The motion avers:

"That the remaining books, papers, records and memoranda in the Respondent's files are work papers and work products of the Respondent based upon information given to Respondent by the above-named clients and as such are privileged communications and Respondent is not legally empowered or authorized to divulge such information."

■ Further, the terms of the subpoena are broad enough to authorize examination of the witness as to any matter, whether referred to in the books and memoranda or not, relevant to the tax liability of Salvatore and Maria Italiano for the years 1947 to 1951, inclusive.

Appellant concedes, as he must, that at common law no privilege was attached to communications from "client" to accountant. If such a privilege exists, it can only arise from some federal or state statute. Appellant's insistence is based upon both. He contends: 1. that the attorney-client privilege extends to certified public accountants who, like appellant, are enrolled before the Treasury Department; and 2. that the State of Florida, by specific statute, has made privileged all communications between certified public accountants and their clients.

more on Evidence (3rd ed.), Sec. 2307, pp. 592–593.

Professor Wigmore has stated the conditions necessary to the establishment of a privilege [10], and has further cautioned us as follows:

"For more than three centuries it has now been recognized as a fundamental maxim that the public (in the words sanctioned by Lord Hardwicke) has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule. * * *

"* * * The investigation of truth and the enforcement of testimonial duty demand the restriction, not the expansion, of these privileges. They should be recognized only within the narrowest limits required by principle. Every step beyond these limits helps to provide, without any real necessity, an obstacle to the administration of justice." 8 Wigmore on Evidence (3rd. ed.), Sec. 2192, pp. 64, 67.

On the other hand, Professor Wigmore has suggested that logically the reasons justifying a privilege for communications between clients and their attorneys practicing before a court of justice apply also to communications between clients and their agents practicing before an administrative tribunal, if its regulations treat the persons who appear before it representing parties in interest as a licensed body having the responsibility of attorneys, and subject to professional discipline. 8 Wigmore on Evidence (3rd. ed.), Sec. 2300(a), pp. 583, 584. He states, however, that judicial precedent in this field is scanty, and such rulings as he cites hold the relationship of client and agent not to be within the privilege [11].

The Treasury Department has promulgated, pursuant to Section 3, Act of July 7, 1884, 23 Stat. 258 [12], certain Rules and Reg-

---

10. "Looking back upon the principle of Privilege, as an exception to the general liability of every person to give testimony upon all facts inquired of in a court of justice, and keeping in view that preponderance of extrinsic policy which alone can justify the recognition of any such exception (ante, Secs. 2192, 2197), four fundamental conditions may be predicated as necessary to the establishment of a privilege against the disclosure of communications between persons standing in a given relation:

"(1) The communications must originate in a *confidence* that they will not be disclosed;

"(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties;

"(3) The *relation* must be one which in the opinion of the community must be sedulously *fostered;* and

"(4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation.

"These four conditions being present, a privilege should be recognized; and not otherwise." 8 Wigmore on Evidence (3rd ed.), Sec. 2285, p. 531.

11. Professor Wigmore's footnote to the text that, "Naturally, judicial precedent in this field is scanty" reads:

"The only rulings discovered to date are the following: McKercher v. Vancouver-Iowa Shingle Co., [1929] 4 D.L.R. 231, Br.C. (a patent agent is not within the privilege); 1892, Brungger v. Smith, C. C.Mass., 49 F. 124 (patent interference proceeding; an agent practicing before the Commissioner of Patents was held not privileged to withhold information obtained from his client; the reasons offered in his argument are convincing, but the opinion is curt and gives no attention to the reasoning.)" The decisions later than that footnote are likewise against the extension of the privilege. See United States v. United Shoe Machinery Corporation, D.C., 89 F.Supp. 357, 360; Kent Jewelry Corp. v. Kiefer, 202 Misc. 778, 113 N.Y.S.2d 12, 18.

12. The pertinent part of 23 Stat. 258 reads as follows:

"Provided, That the Secretary of the Treasury may prescribe rules and regulations governing the recognition of agents, attorneys, or other persons representing claimants before his Department, and may require of such persons, agents and attorneys, before being recognized as representatives of claimants, that they shall show that they are of good character and in good repute, possessed of the necessary qualifications to enable them to render such claimants valuable service, and otherwise competent to advise and assist such claimants in the pres-

ulations governing recognition of attorneys and agents representing persons before the Treasury Department. This Circular 230 as revised December 9, 1951, known as Part 10 of Sub-Title A of Title 31 of the Code of Federal Regulations, governs the admission of attorneys and agents and the conduct of such attorneys and agents before the Bureau of Internal Revenue and for "disbarment" proceedings [13].

 The rules and regulations of the Treasury Department grant to enrolled agents the same "rights, powers, and privileges * * * as an enrolled attorney" in order to provide for the effective discharge of the duties of such agents. There is no provision that a client's communications to an enrolled agent are privileged, and after all, the privilege, if any, belongs to the client and not to the agent. (See Footnote 9, supra.) If, however, the rules and regulations could be construed as so providing, then, it seems to us that they would be in conflict with the statute, 26 U.S.C.A. § 3614(a), (Footnote 1, supra), and that the statute must prevail.

Section 473.15, Florida Statutes 1951, F.S.A. § 473.15 formerly St.1927 c. 12290, Sec. 17, Comp. G.L.1927, Sec. 3933, provides as follows:

"All communications between certified public accountants and public accountants and the person for whom such certified public accountant or public accountant shall have made any audit or other investigation in a professional capacity, and all information obtained by certified public accountants and public accountants in their professional capacity concerning the business and affairs of clients shall be deemed privileged communications in all of the courts of this state, and no such certified public accountant or public accountant shall be permitted to testify with respect to any of said matters, except with the consent in writing of such client or his legal representative."

 Appellant insists that this is a civil case, and, as such, subject to the Federal Rules of Civil Procedure, 28 U.S.C.A., citing Rules 1, 81(a) (3); McCrone v. United States, 307 U.S. 61, 59 S.Ct. 685, 83 L.Ed. 1108; and, further, that under those rules the competency and privilege of witnesses is governed by state laws. Rule 43

---

entation of their cases. And such Secretary may after due notice and opportunity for hearing suspend, and disbar from further practice before his Department any such person, agent, or attorney shown to be incompetent, disreputable, or who refuses to comply with the said rules and regulations, or who shall with intent to defraud, in any manner willfully and knowingly deceive, mislead, or threaten any claimant or prospective claimant, by word, circular, letter, or by advertisement." This provision is brought forward as 5 U.S.C.A. § 261.

13. Part 10.2, Sec. (f), provides the following:

"An agent enrolled before the Treasury Department shall have the same rights, powers, and privileges and be subject to the same duties as an enrolled attorney: Provided, That an enrolled agent shall not have the privilege of drafting or preparing any written instrument by which title to real or personal property may be conveyed or transferred for the purpose of affecting Federal taxes nor shall such enrolled agent advise a client as to the legal sufficiency of such an instrument or its legal effect upon the Federal taxes of such client: And Provided Further,

that nothing in these regulations in this part shall be construed as authorizing persons not members of the bar to practice law."

In Section 10.3 Title 31 Code of Federal Regulations qualifications for enrollment are set forth, and in part say as follows:

"(a) (1) Persons of the following classes who are found, upon consideration of their applications, to possess the qualifications required by the regulations in this part may be admitted to practice before the Treasury Department as attorneys or agents respectively:

"(i) Attorneys at law who have been admitted to practice before the courts of any State or Territory, or the District of Columbia, and who are lawfully engaged in the active practice of their profession.

"(ii) Certified public accountants who have duly qualified to practice as certified public accountants in their own names, under the laws and regulations of any State or Territory, or the District of Columbia, and who are lawfully engaged in active practice as certified public accountants."

(a), 5 Moore's Federal Practice (2nd ed.), Secs. 43.06, 43.07, pp. 1330–1333. Both insistences might be conceded and it still would not follow that the privilege provided by the Florida statute would be applicable to appellant's testimony before the Internal Revenue agent under 26 U.S.C.A. § 3614. Appellant has failed to observe the important distinction between the administrative proceeding under that section and the court action to enforce the summons under 26 U.S.C.A. § 3633(a). Rule 81(a) (3) makes the Rules of Civil Procedure applicable to "proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States * * *." That means that the rules are applicable to the court action to enforce the summons under 26 U.S.C.A. § 3633(a). To contend that the proceeding itself before the Commissioner or the Internal Revenue agent is also a civil case subject to the Rules of Civil Procedure, and particularly to Rule 43(a) as to the admissibility of evidence, would be going too far. For, speaking generally, the system of rules of evidence in force for trials by jury or even in courts of equity is not applicable, either by historical precedent, or by sound practical policy, to inquiries of fact determinable by administrative tribunals or officers [14]. That is generally true as to federal administrative officials [1 Wigmore on Evidence (3rd ed.), Sec. 4c, p. 44] and is more specifically applicable to disputes arising between taxpayers and the federal government under the Internal Revenue Laws [1 Wigmore on Evidence (3rd ed.), Sec. 4c, sub-div. 14, pp. 58, et seq.; see also 26 U.S.C.A. § 1111, Rules of Practice in Tax Court, Rule 31; §§ 3614, 3632; Whitlow v. Commissioner, 8 Cir., 82 F.2d 569, 571]. Clearly, in the part of Rule 81(a) (3) quoted, supra, when construed in connection with Rule 43(a), it was not intended to make so radical a change in administrative procedure as to require that such agencies be restricted by the rigid rules of evidence [15].

We have heretofore noted that the power granted to the Commissioner by 26 U.S.C.A. § 3614 is inquisitorial in character and is similar to the power vested in federal grand juries. As said by the Eighth Circuit in Brownson v. United States, supra, 32 F.2d at page 848, " * * * the statutes involved * * * should receive a like liberal construction in view of the like important ends sought by the government." Or as stated in United States v. Murdock, 284 U.S. 141, 149, 52 S.Ct. 63, 64, 76 L.Ed. 210, "Investigations for federal purposes may not be prevented by matters depending upon state law." See also Doll v. Commissioner, 8 Cir., 149 F.2d 239. Or in the language of this Court, "These statutes, enacted to effectuate a constitutional power, are the supreme law of the land. If they are in conflict with State law, constitutional or statutory, the latter must yield." Shambaugh v. Scofield, 5 Cir., 132 F.2d 345, 346.

The appellant next insists that Section 3631, Internal Revenue Code [16], prohibits unnecessary investigations and is a limitation on the power of the Bureau and

14. Federal Trade Comm. v. Cement Institute, 333 U.S. 683, 705, 706, 68 S.Ct. 793, 92 L.Ed. 1009; Opp Cotton Mills v. Administrator, 312 U.S. 126, 155, 61 S.Ct. 524, 85 L.Ed. 624; Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 229, 230, 59 S.Ct. 206, 83 L.Ed. 126; Interstate Commerce Comm. v. Baird, 194 U.S. 25, 44, 24 S.Ct. 563, 48 L.Ed. 860; Southern Stevedoring Co. v. Voris, 5 Cir., 190 F.2d 275, 277; Woolley v. United States, 9 Cir., 97 F.2d 258, 262; 42 Am.Jur., Public Administrative Law, Sec. 129, p. 461; 1 Wigmore on Evidence (3rd ed.), Sec. 4a, p. 25.

15. In the Notes of the Advisory Committee on Rules as to 81(a) (3) appears the following: " * * * the provision allows full recognition of the fact that the rigid application of the rules in the proceedings themselves may conflict with the summary determination desired * * *."

16. 26 U.S.C.A. § 3631, reads as follows: "No taxpayer shall be subject to unnecessary examinations or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Commissioner, after investigation, notifies the taxpayer in writing that an additional inspection is necessary."

of the Commissioner and not merely a personal right available to the taxpayer, citing Martin v. Chandis Securities Co., supra, and First National Bank of Mobile v. United States, 5 Cir., 160 F.2d 532, 535. That much might be conceded, but it does not appear that the investigation in aid of which this summons issued was unnecessary. True, the statute of limitations has run against the returns for some of the earlier years, but in order to determine tax liability under the net worth-expenditures method (see Footnote 7, supra), the Commissioner is required to establish a sound starting point and may well have to reconstruct the financial history of the taxpayers in prior years. It is not claimed that there has been any examination of the taxpayers' returns for the years 1949, 1950 and 1951.

We find no error in the record, and the judgment or order of the District Court is therefore affirmed.