**In the Matter of Edward E. COLTON, Respondent.**

United States District Court
S. D. New York.
Dec. 28, 1961.

Robert M. Morgenthau, U. S. Atty., Southern District of New York, New York City, Morton L. Ginsberg, Asst. U. S. Atty., Southern District of New York, New York City, of counsel, for the United States.

Corcoran, Kostelanetz, Gladstone & Lowell, New York City, Boris Kostelanetz and Jules Ritholz, New York City, of counsel, for respondent.

METZNER, District Judge.

The government moves for an order pursuant to sections 7402(b) and 7604 of the Int.Rev.Code of 1954, 26 U.S.C. §§ 7402(b), 7604, directing the respondent

Colton, an attorney, to appear before a special agent of the Internal Revenue Service to testify relating to the income tax liability of Herbert and Mercedes Matter, clients of Colton.

Colton was served with a summons requiring him to appear before a special agent to give testimony and to produce all data relating to the preparation and the filing of federal income tax returns for the taxpayers, "which are not privileged according to law." Colton appeared on the date specified, and, during his oral examination, claimed that several questions asked dealt with subjects within the scope of the attorney-client privilege. Colton refused to answer those questions because his clients would not waive the privilege. He did not produce the documents covered by the subpoena, asserting that they had been returned to the clients. Colton also relied on the privilege in refusing to answer whether his files contained any information regarding income earnings reflected on the tax returns, which he or any member of his firm solicited from a third party. The present motion seeks to compel answers to the questions propounded on the examination, and production of the designated documents.

■ The parties have raised the question whether state or federal law determines the scope of the attorney-client privilege in investigations before a special agent of the Internal Revenue Service. Such an investigation is not a "civil action" to which the Federal Rules of Civil Procedure are applicable, whereby the state rule of evidence could be invoked (Fed.R.Civ.P. 43(a), 28 U.S.C.A.). Falsone v. United States, 205 F.2d 734 (5th Cir., 1953), cert. denied, 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375 (1953); see In re Albert Lindley Lee Memorial Hospital, 209 F.2d 122 (2d Cir., 1953), cert. denied sub nom. Cincotta v. United States, 347 U.S. 960, 74 S.Ct. 709, 98 L. Ed. 1104 (1954). These are not judicial proceedings, but rather investigatory inquiries, and federal administrative agencies are not restricted by rules of evidence applicable in courts of law. In re Albert Lindley Lee Memorial Hospital, supra. Furthermore, "[i]nvestigations for federal purposes may not be prevented by matters depending upon state law." United States v. Murdock, 284 U.S. 141, 149, 52 S.Ct. 63, 64, 76 L.Ed. 210 (1931).

■ However, it has never been questioned that the attorney-client privilege can be asserted in such proceedings. Falsone v. United States, supra, 205 F.2d at 738; McMann v. S. E. C., 87 F.2d 377, 378 (2d Cir., 1937). The issue is rather the scope of the privilege as it relates to the examination sought by the agent, and it is clear from the cases previously cited that federal law is applicable.

The attorney-client privilege as developed at common law was originally a privilege of the attorney, permitting him to keep the secrets confided in him by his client and thus preserve his honor. In the eighteenth century, when the desire for truth overcame the wish to protect the honor of witnesses and several testimonial privileges disappeared, the attorney-client privilege was retained, on the new theory that it was necessary to encourage clients to make the fullest disclosures to their attorneys, to enable the latter properly to advise the clients. This is the basis of the privilege today. See generally 8 Wigmore, Evidence §§ 2290–2291 (McNaughton rev. 1961). While some authorities have stated that the privilege should be strictly construed and not expanded, since it is an exception to the general rule that all persons having knowledge of the facts are required to testify, others have recognized that it is vital to the proper execution of the attorney's function, and have upheld it where correctly raised. Compare 8 Wigmore, Evidence § 2291, at 554 (McNaughton rev. 1961) and Wonneman v. Stratford Securities Co., 23 F.R.D. 281 (S.D.N.Y. 1959) with Baird v. Koerner, 279 F.2d 623 (9th Cir., 1960), and In the Matter of Kaplan, 8 N.Y.2d 214, 203 N.Y.S.2d 836, 168 N.E.2d 660 (1960).

**16**

█ Generally it may be said that the attorney-client privilege applies only if

"(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." United States v. United Shoe Mach. Corp., 89 F.Supp. 357, 358–359 (D.Mass. 1950).

█ It is usually held that the privilege does not extend to the fact of retention, or to a retainer agreement as evidence of the retention, since such information is required to enable the court to determine that the relation of attorney and client exists. Chirac v. Reinicker, 11 Wheat. 280, 24 U.S. 280, 6 L. Ed. 474 (1826); Behrens v. Hironimus, 170 F.2d 627 (4th Cir., 1948); United States v. Pape, 144 F.2d 778 (2d Cir., 1944); Goddard v. United States, 131 F. 2d 220 (5th Cir., 1942); In the Matter of Wasserman, 198 F.Supp. 564 (D.D.C. 1961); cf. Magida on Behalf of Vulcan Detinning Co. v. Continental Can Co., 12 F.R.D. 74 (S.D.N.Y.1951), which held that the fact of retention is not privileged, but the terms of the retention are.

█ There has been much litigation as to the applicability of the privilege when an attorney performs nonlegal services for the client. Clearly, when a person who incidentally happens to be a lawyer is hired solely as an accountant, the privilege is inapplicable. Olender v. United States, 210 F.2d 795 (9th Cir., 1954). There is no accountant-client privilege in federal law. Sale v. United States, 228 F.2d 682 (8th Cir., 1956), cert. denied, 350 U.S. 1006, 76 S.Ct. 650, 100 L.Ed. 868 (1956); Falsone v. United States, supra; United States v. Boccuto, 175 F.Supp. 886 (D.N.J.1959).[1] In the case at bar there is no indication that the attorney was also an accountant, although he may have been performing services which were within the normal competence of accountants. On the other hand, such services are also normally performed by attorneys. The services he performs are not similar to those requiring no legal ability, which are traditionally held to be "business" services not covered by the privilege. See Lowy v. Commissioner, 262 F.2d 809 (2d Cir., 1959); McFee v. United States, 206 F.2d 872 (9th Cir., 1953); Banks v. United States, 204 F.2d 666 (8th Cir., 1953), cert. denied, 346 U.S. 857, 74 S.Ct. 73, 98 L.Ed. 370 (1953); Pollock v. United States, 202 F.2d 281 (5th Cir., 1953); Comercio E. Industria Continental, S. A. v. Dresser Industries, Inc., 19 F.R.D. 513 (S.D.N.Y. 1956); United States v. Chin Lim Mow, 12 F.R.D. 433 (N.D.Cal.1952).

█ When the lawyer employs his legal knowledge and skills in advising the client as to what a document should contain, the privilege attaches to communications from the client to aid the judgment of the attorney. Baldwin v. Commissioner of Internal Revenue, 125 F.2d 812, 141 A.L.R. 548 (9th Cir., 1942); see Wigmore, op. cit. supra, § 2309, at 596–598. Considering the complexities of modern tax law, it would seem that an attorney who prepares tax returns for a client is primarily engaged in performing legal services, and that information communicated to such an attorney for the purpose of enabling him to prepare the return should be held to come within the

[1]. In re Fisher, 51 F.2d 424 (S.D.N.Y. 1931), involved the giving of accounting information to a person who was both an accountant and a lawyer, and who performed both types of service for the client. The information apparently was given initially for accounting purposes and subsequently used for legal advice.

attorney-client privilege. Cf. United States v. United Shoe Mach. Corp., supra, 89 F.Supp. at 359; United States v. Kovel, 2d Cir., December 5, 1961, 296 F. 2d 918.

It is clear that the privilege only applies to communications from client to attorney (or from lawyer to client, giving legal advice) that are intended to be confidential. "What is vital to the privilege is that the communication be made *in confidence* for the purpose of obtaining *legal* advice *from the lawyer*." United States v. Kovel, supra. Therefore communications that are intended by the client to be revealed to third persons are not privileged. United States v. Tellier, 255 F.2d 441 (2d Cir., 1958); Wilcoxon v. United States, 231 F.2d 384 (10th Cir., 1956), cert. denied, 351 U.S. 943, 76 S. Ct. 834, 100 L.Ed. 1469 (1956). Consequently, a communication from a client which is incorporated in an income tax return is not within the scope of the privilege, and retained copies of the return must be produced. In re Fisher, supra; Gretsky v. Miller, 160 F.Supp. 914 (D. Mass.1958). Incidentally, the Gretsky case held that the fact that the attorney prepared the return was not within the privilege. Cf. In re Ruos, 159 F. 252 (E. D.Pa.1908).

Books and papers turned over by the client to his attorney are not within the attorney-client privilege, although they may be subject to other privileges, such as the privilege against self-incrimination. Grant v. United States, 227 U.S. 74, 79, 33 S.Ct. 190, 57 L.Ed. 423 (1913). They do not become privileged by handing them to an attorney in the course of an attorney-client relationship. Edison Elec. Light Co. v. United States Elec. Lighting Co., 44 F. 294 (C.C.S.D.N.Y. 1890). If the client may be compelled to produce the documents, they are equally subject to production in the hands of the attorney. McCormick, Evidence 188 (1954); Falsone v. United States, supra; Gretsky v. Miller, supra. In the Edison case the court referred to a decision by Lord Mansfield to the effect that an at-torney upon receiving a subpoena duces tecum should immediately return the papers to his client. For a general discussion of this matter see Wigmore, supra, § 2307.

On the other hand, written material prepared for the purpose of consultation with the attorney is privileged. Wigmore, supra, § 2307, at 594–595.

We come now to the specific questions which are the basis of this motion.

Questions 14, 15, 19, 27, 28, 29, 33, 37, 43, 59, 77, and 80 ask whether Colton or a member of his staff prepared income tax returns for the Matters or any other clients, in any year or in specific years. Clearly, whether Colton or a member of his staff prepared the returns is not a communication from his clients to him, or vice versa. Further, the fact that the returns were prepared by someone other than the taxpayer appeared on the face of the returns when they were filed with the Internal Revenue Service. Therefore there is no privilege with respect to these questions, and respondent is directed to answer them.

Questions 16, 52, and 54 ask whether Colton performed any services for the Matters in the years 1951 and 1954 through 1957 other than the preparation of tax returns. If Colton performed nonlegal services, there is no privilege. If he performed legal services, there is privilege as to communications made in the course of performance, but not as to the fact of performance. Respondent is directed to answer these questions.

Question 55 asks whether he received remuneration during certain years as a result of his representations. Since the amount of fees is not privileged, certainly the fact of receipt cannot be. Respondent is directed to answer this question.

Question 18 relates to the nature of the services performed by Colton for the clients. While it is conceivable that specification of details involved in the rendition of services performed for a

client might result in frustration of the purpose of the privilege, general responses such as "litigation", "drafting of documents", "tax advice" and the like would be proper. The evident purpose of this line of questioning was to determine whether Colton actually gave legal advice to the Matters, so as to call into play the attorney-client privilege. This is a necessary preliminary fact to be established before the privilege can be asserted. Respondent is directed to answer question 18 as indicated.

Question 22 asks whether Colton had produced at the hearing the papers required by the summons. He may not rely on the attorney-client privilege if he has possession of the documents, for a variety of reasons. The clients' papers are not communications subject to the privilege. They included papers which were intended to be made public and they may have included papers received from third parties.

In this connection questions 73, 74 and 75 refer to the statement of counsel that prior to the service of the summons he returned certain papers to the clients. To the extent that any of the papers (duplicate copies of tax returns and worksheets) are in the possession of the attorney, they should be produced. It follows, of course, that question 65 must also be answered.

Question 23 asks whether documents that Colton produced on a prior hearing contained any communications he may have received from persons other than the Matters. As indicated above these communications are not privileged because the third persons are not the client. Respondent is directed to answer this question.

Questions 25 and 76 present the same problem as question 23 and respondent is directed to answer.

Question 72 asks whether the papers contain any communication or information solicited by Colton or members of his staff with respect to income reflected on the tax returns. The fact of existence or nonexistence of such information is not privileged and the question should be answered. However, questions which may be asked to develop the contents of such communications may or may not involve privileged material, depending on the source and nature of the information.

Question 64 asks whether the clients furnished the information as to the sources of income reflected on certain tax returns. Since the sources of the income were disclosed on the tax returns, there can be no privilege.

Motion disposed of as indicated above. So ordered.